[No. 21289-1-III. Division Three. May 25, 2004.]

KERSHAW SUNNYSIDE RANCHES, INC., *Respondent*, v. YAKIMA INTERURBAN LINES ASSOCIATION, ET AL., *Defendants*, LEVEL 3 COMMUNICATIONS, L.L.C., *Appellant*, THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, *Respondent*.

716

*James S. Berg* (of *James S. Berg, P.L.L.C.*) (*Mark C. Laughlin* of *Fraser, Stryker, Meusey, Olson, Boyer & Bloc*, of counsel), for appellant.

*Kevan T. Montoya* (of *Velikanje, Moore & Shore, P.S.*), for respondents.

KATO, C.J. — Level 3 Communications, L.L.C., (Level 3) appeals summary judgment orders concluding it trespassed by installing underground telecommunications lines in a railroad right-of-way that crosses property owned by Kershaw Sunnyside Ranches, Inc. (Kershaw). It contends the railroad that approved the installation owned the right-of-way in fee simple; alternatively, it contends the lines are an incidental use of the right-of-way. Kershaw has cross-appealed, contending the superior court erred in finding the orders were appealable. We affirm in part, reverse in part, and remand.

The property at issue is a 75-foot-wide railroad right-of-way crossing Kershaw's property between Fruitvale and Naches. The right-of-way was created in 1905 by Edward and Ora Kershaw, then the owners of the property. The 1905 deed is on a preprinted form with handwritten additions. The deed stated in pertinent part (with handwritten portions underlined):

> NOW THEREFORE, KNOW ALL MEN BY THESE PRE-SENTS, That <u>we</u>, the said <u>E.A. Kershaw and Ora A. Kershaw, husband and wife,</u> the parties of the first part, for and in consideration of the sum of one <u>thousand & 00</u> Dollars, lawful money of the United States, to <u>him</u> in hand paid by the said party of the second part <u>and other good and valuable considerations including the covenants of second party, hereinafter contained[,]</u> receipt whereof is hereby acknowledged, do hereby give, grant, sell, confirm and convey to the said party of the second part, the NORTH YAKIMA & VALLEY RAILWAY

COMPANY, a Corporation, its successors or assigns, a strip of land <u>seventy five</u> feet wide, in, along, over and through the hereinafter described land in Yakima County, Washington, the property of said part[y] of the first part, to be used by said party of the second part as a right of way for a railway forever, together with the perpetual right to construct, maintain and operate a railway or railways over and across the same. . . .

TO HAVE AND TO HOLD the said right of way, strip of land, easements, privileges and appurtenances to it, the said North Yakima & Valley Railway Company, its successors or assigns, forever,

<u>Provided, it is understood and agreed that second party[,] its successors or assigns, shall at its or their own proper cost and expense, provide and maintain over and across said railroad and right of way four suitable and convenient crossings of sufficient width to permit the use thereof of wagons, hay rakes and other ordinary farm machinery, in passing to and from the portions of said premises separated by said railroad and right-of-way with proper approaches and one of which shall be an open crossing, provided with proper cattle guards, and the others may be provided with convenient and suitable gates, which shall be provided and maintained by second party, its successors or assigns. . . .</u>

<u>It is understood and agreed that the aforesaid covenants and agreements on the part of second party shall run with said granted right of way and be binding upon said company, and its successors and assigns, so long as a railway may be maintained by it or them, over and across said premises.</u>

Clerk's Papers (CP) at 585-87; *see* CP 654-55.

The North Yakima and Valley Railway Company later transferred its interest in the right-of-way to the Northern Pacific Railroad, predecessor to the Burlington Northern and Santa Fe Railway Co. (BNSF). BNSF subsequently transferred its interest to the Yakima Interurban Lines Association, reserving to itself the mineral and water rights, as well as "an exclusive, permanent easement for construction, reconstruction, maintenance, use and/or operation of one or more longitudinal pipelines for transporting hydrocarbon substances and telecommunication or fiber

optic communication lines." CP at 590. In 1998, BNSF agreed to permit Level 3 to construct a fiber-optic transmission line on the right-of-way. Level 3 installed an underground line on the right-of-way pursuant to this agreement.

Ora Kershaw transferred the Kershaw property to Ronald Kershaw in 1960. The quitclaim deed expressly excepted the railroad right-of-way. Ronald and Betty Kershaw transferred the property in 1986 to the family business, Kershaw Sunnyside Ranches, Inc., which is now operated by Ronald Kershaw's two sons, Robert and Edward.

Kershaw filed this action in 2000 against Level 3, BNSF, Yakima Interurban Lines, and the State of Washington. The complaint sought an order quieting title to the right-of-way and allowing removal of the fiber-optic cable, compensation for trespass and damage to personal property, and a permanent injunction against the continued use of the right-of-way by Level 3 and Yakima Interurban Lines. Kershaw later amended the complaint to add allegations that Level 3 had violated 42 U.S.C. § 1983, RCW 80.04.440, and article I, section 16 of the Washington Constitution.

Kershaw moved for partial summary judgment, requesting an order "adjudging that none of the Defendants have rights to occupy the real property in which Level 3 Communications laid a fiber-optic cable." CP at 899. The superior court held: (1) the 1905 deed transferred only a right-of-way for a railroad, not a fee simple interest, and the Kershaws retained the subsurface rights to the property; (2) Level 3 had the right to use the right-of-way for its fiber-optic cable, but only through the eminent domain process, with just compensation to Kershaw; and (3) the right-of-way had not been abandoned.

Level 3 moved to dismiss the additional claims stated in Kershaw's amended complaint. Kershaw then moved for partial summary judgment on the issues of liability for trespass and for violation of 42 U.S.C. § 1983 and RCW 80.04.440. In a memorandum opinion, the superior court posed and answered the issues as follows:

1. **Whether Level 3 Communications had authority to bury its fiber optic telecommunications cable in the right-of-way . . . without paying compensation to [Kershaw].**

 ANSWER: No. The authority granted by BNSF was insufficient.

2. **Whether the right to compensation granted by the doctrine of eminent domain for the burden of a fiber optic telecommunications cable extends to [Kershaw] as fee owner of the servient estate where the dominant estate is a railroad right-of-way.**

 ANSWER: Yes. A telecommunications fiber optic [cable] buried within a private railroad right of way . . . is an unreasonable burden on the fee owner of the property. It was not bargained for in the original grant of a right-of-way to the railroad. It is not an incidental use of the railway in the traditional sense. A telecommunications company has the right to condemn the property for an easement to bury its fiber optic cable. Any property owner whose property is taken in whole or in part by such a burden is entitled to compensation.

3. **Whether a telecommunications fiber optic cable buried in this railroad right-of-way is an incidental use of the railroad.**

 ANSWER: No. Incidental uses are measured by what is reasonably necessary for the building, operation and maintenance of the railroad. Where the fiber optic cable will be used substantially to service other members of the public and where the railroad is not significantly dependent on the fiber optic cable for its primary means of communication, the cable is not an "incidental use" of the railroad.

4. **Whether Level 3 Communications has trespassed on the property of [Kershaw] by burying its fiber optic cable in the railroad right of way running through [Kershaw's] property.**

 ANSWER: Yes. Either direct authority from [Kershaw] or authority granted *vis a vis* a condemnation order was necessary for Level 3 Communications to bury its fiber optic cable within the railway corridor crossing [Kershaw's] property. [Kershaw] has not granted permission nor has a condemnation order been entered allowing the burial.

5. **Whether the court's [previous] ruling ... regarding [Kershaw's] subsurface rights is inconsistent with its ruling that Level 3 Communications may bury its cable with condemnation damages for [Kershaw].**

ANSWER: No. Subsurface rights refer to mineral and related rights, not to the top soil lying beneath the surface. Regardless of whether a fiber optic cable is buried in top soil or a deeper stratum, and regardless whether minerals are disturbed, Level 3 Communications may bury its cable only with direct permission of [Kershaw] or upon paying damages as measured by the doctrine of condemnation. Condemnation may be instituted by Level 3 Communications. An inverse condemnation claim may be instituted by [Kershaw]. [Kershaw] is not compelled to file an inverse condemnation claim. If neither party proceed[s] with a condemnation action, [Kershaw] will be entitled to other legal or equitable relief, and may not be limited to damages of "just compensation" measured by the doctrine of condemnation. Mineral, gas, and other valuable subsurface rights remain unresolved as between [Kershaw] and the railroad successors and assigns of N.Y. & V. Ry. Co. These potential competing rights have not been put in issue by the pleadings.

CP at 809-11.

The court entered an order consistent with its prior summary judgment order and its memorandum opinion. Level 3 filed this appeal, but this court remanded for entry of "appropriate written findings" on the issue of appealability. CP at 984. The superior court then entered a new order, finding pursuant to RAP 2.2(d) that there was no just reason for delay in resolving the issues. Kershaw has appealed this portion of the superior court's order.

We first address Kershaw's issue on cross appeal, which is whether the superior court abused its discretion in finding there was no just reason for delay in resolving the issues raised here. In its order on remand, the court stated:

[T]he court finds that the effect of this Order and the court's Order on Summary Judgment of August 10, 2001, is to legally obligate Level 3 Communications to initiate an eminent domain proceeding against [Kershaw] as a condition precedent to

asserting any rights in the subject right-of-way property, when, prior to the commencement of this suit, Level 3 had already installed a fiber-optic cable within the subject right of way pursuant to what Level 3 claims was a valid right under a specific conveyance to it, for consideration, by a predecessor in interest of N.Y. & V. Ry. Co.

The court further finds that the situation described herein is analogous to the situation in *Gazin v. Hieber*, 8 Wn. App. 104, 113-114, 504 P.2d 1178 (1972), wherein the court held that an adjudication, which did not resolve all issues, was still an "appealable final judgment" because of the potential of irreparable injury to Level 3 by awaiting the final outcome of the litigation.

The court further finds that the legal issues addressed in this Order and the Order on Summary Judgment of August 10, 2001, are matters of first impression in this state.

Regarding the *Schiffman/Lindsay* [*Schiffman v. Hanson Excavating Co.*, 82 Wn.2d 681, 513 P.2d 29 (1973); *Lindsay Credit Corp. v. Skarperud*, 33 Wn. App. 766, 657 P.2d 804 (1983)] factors identified in *Pepper v. King County*, 61 Wn. App. 339, 351-353, 810 P.2d 527 (1991), the court makes the following additional findings:

1. The relationship between the adjudicated and unadjudicated claims: [Kershaw] has alleged against . . . Level 3 claims involving quiet title, trespass, injunctive relief, and violations of 42 U.S.C. section 1983 and RCW 80.04.440. [Kershaw] has also alleged against . . . Yakima Interurban Lines Association ("YILA") claims involving conversion, quiet title, and violation of RCW 4.24.630. The only adjudicated claim is trespass. All of the remaining claims are unadjudicated.

If the dispute immediately proceeds to trial without an appeal, the only issues before the court related to . . . Level 3 concern damages asserted through claims for injunctive relief and violations of 42 U.S.C. section 1983 and quiet title and damages through RCW 80.04.440. The quiet title claim under RCW 80.04.440 is based upon the court's determination that Level 3 has the right to maintain a condemnation action with regard to the railroad right-of-way property. Level 3 chooses not to maintain such a condemnation action. A quiet title claim is also separately based on subsurface rights, if any. If the matter proceeds to an immediate appeal and the Court of Appeals reverses this court's decision on trespass, all damage

claims against Level 3, by necessity, terminate. The claims against YILA relate exclusively to quiet title and alleged damage to fruit trees and irrigation equipment occurring during YILA's activities on [Kershaw's] property. [Kershaw's] claim against YILA's right to be on the railroad right of way is dependent upon whether said right of way has been abandoned. The court has previously ruled, based upon the evidence, that said right of way has not been abandoned. Therefore, the presence or absence of an immediate appeal will have no impact upon [Kershaw's] claims against YILA. The court finds that the relationship between the adjudicated and unadjudicated claims urges in favor of an immediate appeal.

2. Whether questions which would be reviewed on appeal are still before the trial court for determination in the unadjudicated portion of the case: The court finds that there are no questions to be reviewed on appeal that remain before the trial court in the unadjudicated portion of the case, which factor favors an immediate appeal.

3. Whether it is likely that the need for review may be mooted by future developments in the trial court: As related to . . . Level 3, the only future developments before the trial court involve issues of liability under RCW 80.04.440, damages, quiet title, and attorneys' fees. Because the basis upon which the trial court ruled in favor of [Kershaw] on the trespass issue is a matter of first impression in the state of Washington and further because Level 3 is engaged in building an infrastructure far exceeding the geographic area of [Kershaw's] property and needs a disposition for continued planning for its business, the trial court believes that Level 3 will appeal the trespass issue regardless of the outcome of the remaining matters before the trial court. The court finds that this factor also urges in favor of an immediate appeal.

4. Whether an immediate appeal will delay the trial of the unadjudicated matters without gaining any offsetting advantage in terms of the simplification and facilitation of that trial: For the reasons stated regarding factor 3 above, the court does not believe that an immediate appeal will delay the ultimate outcome of the dispute. Furthermore, if the Court of Appeals reverses the trial court decision on the trespass issue, considerable time and expense will be saved through avoidance of a trial. The court finds that this favors an immediate appeal.

The court further finds that the ultimate outcome of the dispute is irrelevant to [Kershaw's] right to use the property at issue, as such property is within a railroad right of way that has not been abandoned.

5. The practical effects of allowing an immediate appeal: The court finds that the hardship that urges in favor of an immediate appeal is the potential cost of a trial that may be a needless expense if the court erred with respect [to] its decision on [Kershaw's] trespass claim. The court further finds that two unique circumstances support this finding: (a) that the trespass issue is a matter of first impression in the state of Washington; and (b) Level 3 is engaged in building an infrastructure far exceeding the geographic area of [Kershaw's] property and needs a disposition for continued planning for its business. This second circumstance is also relevant to the business planning for other similarly situated telecommunication businesses.

CP at 974-77.

██ ██ RAP 2.2(d) permits an interlocutory appeal if the superior court finds "there is no just reason for delay." *See* CR 54(b). This determination is itself subject to review under the abuse of discretion standard. *Nelbro Packing Co. v. Baypack Fisheries, L.L.C.*, 101 Wn. App. 517, 524-25, 6 P.3d 22 (2000). Factors relevant to the determination are:

(1) [T]he relationship between the adjudicated and the unadjudicated claims, (2) whether questions which would be reviewed on appeal are still before the trial court for determination in the unadjudicated portion of the case, (3) whether it is likely that the need for review may be mooted by future developments in the trial court, (4) whether an immediate appeal will delay the trial of the unadjudicated matters without gaining any offsetting advantage in terms of the simplification and facilitation of that trial, and (5) the practical effects of allowing an immediate appeal.

*Schiffman v. Hanson Excavating Co.*, 82 Wn.2d 681, 687, 513 P.2d 29 (1973).

Kershaw challenges the superior court's finding with respect to the fifth factor. It contends the finding would permit an interlocutory appeal in any case that would be set

for trial in the absence of an appeal. But Kershaw ignores the court's supporting observations that the issue is a novel one in Washington whose resolution will have a far-reaching effect on Level 3 and other similarly situated telecommunications companies. Moreover, Kershaw has not addressed the court's findings regarding the other four factors. It thus has not established an abuse of discretion.

We next address Level 3's substantive issues on appeal. The first is whether the 1905 deed conveyed to the railroad a fee simple interest in the right-of-way. In reviewing a summary judgment order, we engage in the same inquiry as did the superior court. *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 451, 842 P.2d 956 (1993). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The burden is on the moving party to establish its right to judgment as a matter of law, and facts and reasonable inferences from the facts are considered in favor of the nonmoving party. *Our Lady of Lourdes*, 120 Wn.2d at 452.

■■■ Our duty in construing a deed is to ascertain and enforce the parties' intent. *Brown v. State*, 130 Wn.2d 430, 437, 924 P.2d 908 (1996). Deeds utilizing the statutory warranty form[1] and conveying definite strips of land will be construed as granting fee simple title "unless additional language in the deeds clearly and expressly limits or qualifies the interest conveyed." *Id*. The Supreme Court recently attempted to clarify the "considerable disarray," *id*. at 437, in cases addressing whether railroad deeds conveyed fee simple titles or only easements:

> We have given special significance to the words "right of way" in railroad deeds. In *Roeder* [*Co. v. Burlington N., Inc.*, 105 Wn.2d 567, 716 P.2d 855 (1986)], for example, one of the deeds provided, in part, the grantor: "conveys and warrants

---

[1] The parties here agree the 1905 deed was in the statutory warranty form. *See* Br. of Appellant at 13; Br. of Resp't at 24.

unto Bellingham and Northern Railway Company . . . for all railroad and other right of way purposes, certain tracts and parcels of land . . . ." *Roeder*, 105 Wn.2d at 569. Recognizing a railroad can hold rights of way in fee simple or as easements, we held the deed granted an easement based on the specifically declared purpose that the grant was a right of way for railroad purposes, and there was no persuasive evidence of intent to the contrary. *Roeder*, 105 Wn.2d at 574. We reached the same result in *Morsbach v. Thurston County*, 152 Wash. 562, 564, 278 P. 686 (1929) (deed granted "the right-of-way for the construction of said company's railroad in and over. . ."); *Swan* [*v. O'Leary*, 37 Wn.2d 533, 534, 225 P.2d 199 (1950)] (granted property *"for the purpose of a Railroad right-of-way. . ."*); *Veach* [*v. Culp*, 92 Wn.2d 570, 572, 599 P.2d 526 (1979)] (granted "[a] right-of-way one hundred feet wide. . ."). *See also Reichenbach v. Washington Short Line Ry. Co.*, 10 Wash. 357, 358, 38 P. 1126 (1894) ("so long as the same shall be used for the operation of a railroad" construed as granting easement); *Pacific Iron Works v. Bryant Lumber & Shingle Mill Co.*, 60 Wash. 502, 505, 111 P. 578 (1910) (deed providing "to have and to hold the said premises . . . *for railway purposes, but if it should cease to be used for a railway the said premises shall revert to said grantors"* grants easement not determinable fee); *King County v. Squire Inv. Co.*, 59 Wn. App. 888, 890, 801 P.2d 1022 (1990) ("grant and convey . . . a right-of-way . . . . To Have and to Hold . . . **so long as said land is used as a right-of-way**. . ." grants easement), *review denied*, 116 Wn.2d 1021 (1991).

These cases are consistent with the majority of cases that hold the use of the term "right of way" as a limitation or to specify the purpose of the grant generally creates only an easement. *See Harris* [*v. Ski Park Farms, Inc.*, 120 Wn.2d 727, 738, 844 P.2d 1006 (1993), *cert. denied*, 510 U.S. 1047 (1994)]; *Machado v. Southern Pac. Transp. Co.*, 233 Cal. App. 3d 347, 284 Cal. Rptr. 560 (1991). Conversely, where there is no language in the deed relating to the purpose of the grant or limiting the estate conveyed, and it conveys a definite strip of land, the deed will be construed to convey fee simple title. *Swan*, 37 Wn.2d at 536; 65 Am. Jur. 2d *Railroads* § 76 (1972); *see, e.g.*, *Urbaitis v. Commonwealth Edison*, 143 Ill. 2d 458, 575 N.E.2d 548, 552 (1991).

*Brown*, 130 Wn.2d at 438-40 (footnote omitted); *see Hanson Indus., Inc. v. Spokane County*, 114 Wn. App. 523, 527-30, 58 P.3d 910 (2002), *review denied*, 149 Wn.2d 1028 (2003).

In *Brown*, the court concluded that dozens of deeds conveyed fee simple interests to a railroad. Most of the deeds at issue expressly conveyed fee simple title. *Brown*, 130 Wn.2d at 440. About half of the deeds contained references to "right of way." *Id.* at 441. But the *Brown* court noted that these references appeared either in the legal descriptions of the properties or in the portions of the deeds describing the railroad's obligations, concluding these were intended merely to describe the land, not to limit the conveyance. *Id.*

Here, the 1905 deed expressly stated the property was "to be used by said party of the second part as a right of way for a railway." CP at 585. This language in the deed's granting clause specified the purpose of the grant and indicates it created only an easement.

Level 3 contends the 1905 deed's use of the statutory form and its grant of a specific strip of land create a presumption that the parties intended to convey fee simple title.[2] This argument fails to recognize that the deed's granting clause expressly limited the interest conveyed to a particular purpose. As *Brown* recognized, the use of the term "right of way" to specify the purpose of the grant generally creates only an easement.

In addition, a reverter clause in a railroad right-of-way deed is persuasive evidence that the parties intended to convey only an easement. *See Pac. Iron Works v. Bryant Lumber & Shingle Mill Co.*, 60 Wash. 502, 505-06, 111 P. 578 (1910); *King County v. Squire Inv. Co.*, 59 Wn. App. 888, 890, 801 P.2d 1022 (1990), *review denied*, 116 Wn.2d 1021 (1991); *see also King County v. Rasmussen*, 299 F.3d 1077,

---

[2] Level 3 urges us to examine the seven factors identified in *Brown*, 130 Wn.2d at 438, to determine whether a deed transferred fee simple title or an easement. Some of the factors suggest the 1905 deed conveyed a fee simple interest, but others suggest the deed conveyed merely an easement. The factors thus are not conclusive.

1088 (9th Cir. 2002) (absence of reverter clause indicates deed conveyed fee simple interest), *cert. denied*, 538 U.S. 1057 (2003). The 1905 deed's final paragraph is a reverter clause that expressly states the grant would remain in effect only "so long as a railway may be maintained" by the railroad. CP at 587.

■ The conduct of the parties after the deed's execution also may be helpful in determining their intent. *Brown*, 130 Wn.2d at 438. Level 3 contends the right-of-way exception in Ora Kershaw's 1960 quitclaim deed to Ronald Kershaw is evidence that the parties to the 1905 deed intended to convey a fee simple interest. The 1960 deed's exception, however, logically could have been an expression of the parties' understanding that Ronald Kershaw's fee interest was subject to the railroad's easement. *See Harris v. Ski Park Farms, Inc.*, 120 Wn.2d 727, 740, 844 P.2d 1006 (1993), *cert. denied*, 510 U.S. 1047 (1994). Level 3's argument would be more persuasive if the 1960 deed had excepted the right-of-way "in terms of acres of land." *See Rasmussen*, 299 F.3d at 1087. But in the absence of such language, the 1960 deed's language is consistent with a conclusion the 1905 deed created only an easement.

Moreover, if the parties' intent in the 1905 deed was to convey a fee simple interest, there would have been nothing for Ora Kershaw to except in the 1960 deed. The language of the 1960 deed thus supports the conclusion that the 1905 deed created only an easement.

Level 3 also contends Kershaw has no interest in the right-of-way in light of the 1960 deed's exception. Level 3 reasons that this exception reserved the right-of-way to Ora Kershaw, and Ronald Kershaw thus had no interest in it to convey to Kershaw Sunnyside Ranches, Inc. Level 3 relies on *Harris*, 120 Wn.2d at 732-33, a factually complex case that ultimately addressed the legal effect of a purchase and sale agreement and deed that excepted a railroad right-of-way. *Harris* is distinguishable because it involved a statutory warranty deed. Here, the 1960 deed was a quitclaim deed, which conveyed "all the then existing legal and

equitable rights of the grantor." RCW 64.04.050. Ora Kershaw thus conveyed her fee simple interest in the property, which was subject to the railroad's easement. This interest thus passed to Ronald Kershaw and eventually to Kershaw Sunnyside Ranches, Inc.

The intention of the parties in executing the 1905 deed was to convey only an easement, not a fee simple interest. The superior court's order to this effect is correct.

 Alternatively, Level 3 contends that, even though the right-of-way is only an easement, its installation of underground fiber-optic cable is a permitted use. Article XII, section 19 of the Washington Constitution provides:

> Any association or corporation, or the lessees or managers thereof, organized for the purpose, or any individual, shall have the right to construct and maintain lines of telegraph and telephone within this state, and said companies shall receive and transmit each other's messages without delay or discrimination and all of such companies are hereby declared to be common carriers and subject to legislative control. Railroad corporations organized or doing business in this state shall allow telegraph and telephone corporations and companies to construct and maintain telegraph lines on and along the rights of way of such railroads and railroad companies, and no railroad corporation organized or doing business in this state shall allow any telegraph corporation or company any facilities, privileges or rates for transportation of men or material or for repairing their lines not allowed to all telegraph companies. The right of eminent domain is hereby extended to all telegraph and telephone companies. The legislature shall, by general law of uniform operation, provide reasonable regulations to give effect to this section.

Level 3 contends in part that this provision gives it absolute authority to place its lines on the railroad right-of-way. However, "[t]he only right absolutely declared is to maintain lines of telegraph and telephone within the state [through the power of eminent domain]." *State ex rel. Spokane & British Columbia Tel. & Tel. Co. v. City of Spokane*, 24 Wash. 53, 60, 63 P. 1116 (1901). The right thus is subject to article I, section 16 of the Washington Consti-

tution, which requires compensation for any taking of property for public or private use.

■ The legislature has extended the right of eminent domain to telecommunications companies. RCW 80.36.010. It also has provided in pertinent part:

> Any telecommunications company, or the lessees thereof, doing business in this state, shall have the right to construct and maintain all necessary telecommunications lines for public traffic along and upon any public road, street or highway, along or across the right-of-way of any railroad corporation, and may erect poles, posts, piers or abutments for supporting the insulators, wires and any other necessary fixture of their lines, in such manner and at such points as not to incommode the public use of the railroad or highway, or interrupt the navigation of the waters: PROVIDED, That when the right-of-way of such corporation has not been acquired by or through any grant or donation from the United States, or this state, or any county, city or town therein, then the right to construct and maintain such lines shall be secured only by the exercise of right of eminent domain, as provided by law.

RCW 80.36.040.

This provision indicates that, unless the railroad right-of-way was acquired as a public grant, a telecommunications company may place its lines on the right-of-way only by exercising its right of eminent domain.

Railroad rights-of-way, however, historically have been treated as more than simple easements. *See W. Union Tel. Co. v. Pa. R.R.*, 195 U.S. 540, 570, 25 S. Ct. 133, 49 L. Ed. 312 (1904) ("A railroad right of way is a very substantial thing. It is more than a mere right of passage. It is more than an easement."); *Morsbach v. Thurston County*, 152 Wash. 562, 569, 278 P. 686 (1929).

■ Among the unique features of a railroad right-of-way is the right to exclude other uses, including those of the owner of the servient estate. Danaya C. Wright & Jeffrey M. Hester, *Pipes, Wires, and Bicycles: Rails-To-Trails, Utility Licenses, and the Shifting Scope of Railroad Easements from the Nineteenth to the Twenty-First Centu-*

*ries*, 27 ECOLOGY L.Q. 351, 397 (2000) (hereafter Wright & Hester); *see N. Pac. Ry. v. Tacoma Junk Co.*, 138 Wash. 1, 6, 244 P. 117 (1926). From this principle of exclusivity has arisen the incidental use doctrine, which "states that a railroad may use its easement to conduct not only railroad-related activities, but also any other incidental activities that are not inconsistent and do not interfere with the operation of the railroad." Wright & Hester at 421.

> The justification for allowing these incidental uses is three-fold: (1) the use is nominal compared to the already burden-some railroad use; (2) the easement gives the railroad exclusive use rights to the land, so no one else could authorize the third party uses; and (3) the use is a railroad use insofar as it relates in some way to the railroad's business. Because railroad easements are so large and burdensome, any incidental uses are usually so minimal compared to the primary rail use that damages would be nominal.

*Id.* at 423.

No Washington case has addressed whether the incidental use doctrine permits placement of underground cables on railroad rights-of-way without compensation to owners of servient properties. Courts from other jurisdictions have reached inconsistent decisions, but the majority holds that underground fiber-optic cables are permitted as incidental uses. Jill K. Pearson, Note, *Balancing Private Property Rights with Public Interests: Compensating Landowners for the Use of Railroad Corridors for Fiber-Optic Technology*, 84 MINN. L. REV. 1769, 1787-90 (2000) (hereafter Pearson); Wright & Hester at 429-30; *compare Hynek v. MCI World Communications, Inc.*, 202 F. Supp. 2d 831, 838-39 (N.D. Ind. 2002) (placement of fiber-optic line in railroad easement is incidental use); *Mellon v. S. Pac. Transp. Co.*, 750 F. Supp. 226, 229-31 (W.D. Tex. 1990) (same); *Davis v. MCI Telecomms. Corp.*, 606 So. 2d 734, 737 (Fla. Dist. Ct. App. 1992) (placement of fiber-optic line was only a nominal burden), *review denied*, 618 So. 2d 208 (Fla. 1993); *with Buhl v. U.S. Sprint Communications Co.*, 840 S.W.2d 904, 910 (Tenn. 1992) (placement of fiber-optic line was beyond

scope of railroad easement because it had only a nonrailroad commercial purpose).

In Washington, "[p]oles and wires for carrying electric current are considered a customary incidental use of highways, and are not now generally deemed such an encroachment upon the right of abutting property owners as to afford them a right to compensation for the additional servitude to which their fee interests are subjected." *State ex rel. York v. Bd. of County Comm'rs*, 28 Wn.2d 891, 904, 184 P.2d 577 (1947). Historically in Washington, railroads are viewed as "public highway[s], created for public purposes." *Puget Sound Elec. Ry. v. R.R. Comm'n*, 65 Wash. 75, 84, 117 P. 739 (1911); *see Lawson v. State*, 107 Wn.2d 444, 449, 730 P.2d 1308 (1986). Logic suggests, then, that the incidental use doctrine should apply to railroad rights-of-way, just as it does to public highways.

Kershaw raises several arguments in opposition to this conclusion. First, it contends the right-of-way has been abandoned. An abandoned railroad right-of-way reverts to the reversionary interest holders. *Lawson*, 107 Wn.2d at 449. But the superior court held as a matter of law that the right-of-way has not been abandoned.[3] Because Kershaw has not assigned error to this conclusion, it is not properly before us on appeal. *See* RAP 10.3(a)(3).

Kershaw next contends the incidental use doctrine should not apply because, unlike public highways, railroad rights-of-way are privately owned and are used for commercial purposes. This is the reasoning adopted by the superior court, which relied on Pearson, *supra*. The Pearson law review note, without reference to Washington law, concluded the incidental use doctrine should not apply in this circumstance because (unlike the telephone and telegraph lines used by railroads during the 19th and early 20th centuries) fiber-optic cables serve no direct railroad-based purpose. But even though a railroad does not directly apply the technology in its day-to-day operations, it generates

---

[3] Mere nonuse is not conclusive of abandonment. *Netherlands Am. Mortgage Bank v. E. Ry. & Lumber Co.*, 142 Wash. 204, 208-10, 252 P. 916 (1927).

revenue from the placement of the cables on its right-of-way, which at least indirectly serves a railroad purpose.

More importantly, in Washington the incidental use doctrine applies if the use is "not . . . inconsistent with the public use to which the highways are dedicated." *York*, 28 Wn.2d at 905. An incidental use is permitted within a public right-of-way, without compensation to the abutting landowner, if it does not create an additional burden on the servient estate. *Id.* at 904. Kershaw contends a purely private use is inherently inconsistent with a public right-of-way. But while privately owned telecommunications companies operate for a profit, the public has an important interest in their services and infrastructure. In Washington, this interest receives constitutional and statutory recognition. *See* WASH. CONST. art. XII, § 19; RCW 80.36.010–.040; *see also* RCW 80.36.300 (state policy to "(1) [p]reserve affordable universal telecommunications service; (2) [m]aintain and advance the efficiency and availability of telecommunications service; [and] (3) [e]nsure that customers pay only reasonable charges for telecommunications service"). Telecommunications services are not a purely private interest in Washington.

Because railways in Washington are considered public highways, and because placement of fiber-optic cables is not inconsistent with that public use, the use of the right-of-way for that purpose is incidental. The issue, then, is whether compensation is required because the use places an additional burden on the servient estate. A use places an additional burden on the servient estate if it unreasonably interferes with the rights of the abutting landowner. *York*, 28 Wn.2d at 904. In light of *York*'s holding that power (and presumably telephone) poles and lines do not unreasonably interfere with abutting landowners' rights, it is difficult to imagine how placement of underground lines would nevertheless be unreasonable.

> While telephone lines and poles are tall and imposing, and the lines strung on them often numerous and cluttered, buried fiber-optic lines are barely half an inch in diameter, and usually

only one runs within the corridor. In terms of physical size and presence, the fiber-optic line and its appurtenant structures (repeaters) are far smaller and fewer in number than telephone lines and poles.

Another critical distinction between telephone lines and fiber-optic lines is their location. Fiber-optic lines are buried below ground (beneath the frost line, generally around 36 inches) while telephone poles and lines sit above ground. Unquestionably telephone lines and poles are more unsightly than buried fiber-optic lines. Having a buried fiber-optic line running 36 inches below the surface of the railroad easement will likely have little if any effect upon the value of the servient fee, whereas telephone lines and poles in the railroad easement might have some measurable negative effect upon the value of the fee estate. At least in the case of electric powerlines and poles, such unsightliness is often an element of damages in easement condemnation proceedings.

The telephone line poses numerous possible burdens; it is unsightly, repair crews might need access to the lines and poles through the servient estate, and the poles and lines may pose a danger to people on the land of the servient estate (the poles may fall and the wires may electrocute). In many cases, however, fiber optics are located within pre-existing gas pipelines so it can hardly be argued that they are an additional burden. Laying the cables might not even require digging up the surface. If the key to whether a railroad may grant a subeasement is whether that subeasement imposes an additional burden on the servient estate, then a fiber-optic cable is one of the least intrusive third-party uses the railroads have authorized to date.

Wright & Hester at 431-32 (footnotes omitted).

Finally, Kershaw contends the underground placement of the fiber-optic cable exceeds the scope of the railroad right-of-way. It argues the 1905 deed granted a right-of-way for a railroad, which by its nature is confined to the *surface* of the land. Kershaw reasons that, because the deed did not grant to the railroad the right to use the land's subsurface or mineral rights, placement of underground cables exceeds the scope of the original grant. Kershaw relies on several cases addressing whether easements for ingress and egress

include the right to install underground utilities. *See U.S. Cablevision Corp. v. Theodoreu,* 192 A.D.2d 835, 596 N.Y.S.2d 485 (1993) (ingress-egress easement does not include right to install underground pipes or utility lines); *Gordon v. Hoy,* 211 Va. 539, 178 S.E.2d 495 (1971) (same); *see also Consol. Cable Utils., Inc. v. City of Aurora,* 108 Ill. App. 3d 1035, 439 N.E.2d 1272, 64 Ill. Dec. 464 (1982) (easement for gas, electric, and telephone lines does not include easement for cable television line). None of these cases involved a railroad right-of-way, which is "more than a mere right of passage." *W. Union,* 195 U.S. at 570.

No Washington case has addressed whether a railroad right-of-way includes the right to install underground cables. Railroad rights-of-way acquired by federal grant are construed liberally in favor of the railroad, which thus are permitted to construct appurtenant structures whose foundations undoubtedly are below the surface of the land. Wright & Hester at 411 (citing *Leo Sheep Co. v. United States,* 440 U.S. 668, 683, 99 S. Ct. 1403, 59 L. Ed. 2d 677 (1979); *United States v. Denver & Rio Grande Ry.,* 150 U.S. 1, 14 S. Ct. 11, 37 L. Ed. 975 (1893)). By administrative interpretation, "railroads are given wide discretion to authorize third-party uses of their subsurface corridor." Wright & Hester at 412.

State law is more equivocal, in part because railroad rights-of-way frequently are described in terms of *use,* rather than by physical dimension. Wright & Hester at 409, 412.

> [S]tate courts have not consistently defined the terms "surface" and "subsurface," making it impossible to determine the exact depth of any railroad easement. In the majority of states, a railroad easement appears to include everything in the subsurface except the mineral estate because the surface estate requires subjacent support. Only in the minority of states does the depth issue seem to create problems for courts . . . .

Wright & Hester at 413-14.

*Mellon* states what Wright & Hester call the majority view:

The railroad right-of-way also includes the incidental below ground uses of its right-of-way. *See Lo-Vaca Gathering Co. v. Missouri K.T.R.R.*, 476 S.W.2d 732, 739 (Tex. Civ. App.—Austin 1972, writ ref'd n.r.e.) (railroad's permission required to site a buried gas pipeline on the right-of-way); *But cf. Chugach Natives, Inc. v. Doyon, Ltd.*, 588 F.2d 723, 728 (9th Cir. 1978) (subsurface estate refers to the mineral estate, while the surface estate refers to the remainder of the non-mineral estate including subsoil); *United States v. Union Pacific R.R.*, 353 U.S. 112, 77 S. Ct. 685, 1 L. Ed. 2d 693 (1957) (the railroad cannot undertake most mineral estate uses of the right-of-way, but can authorize uses of the remainder of the right-of-way); *Great Northern Ry. v. United States*, 315 U.S. 262, 62 S. Ct. 529, 86 L. Ed. 836 (1942).

The test for determining right-of-way uses is whether the subject use is inconsistent with the purposes for which the right-of-way was granted. *United States v. Union Pacific R.R.*, 353 U.S. 112, 77 S. Ct. 685, 1 L. Ed. 2d 693 (1957). In *Union Pacific,* the Supreme Court stated the railroad right-of-way uses which are incidental to, or consequential upon, those things which the legislature has authorized, ought not, unless specifically prohibited, to be held by judicial construction to be ultra vires. *Id.*

This Court finds the right-of-way surface includes the non-mineral topsoil that would be occupied by a buried fiber optic line, and the fiber optic cable is an authorized incidental use which is not inconsistent with railroad uses and does not burden the subservient estate retained by the Plaintiff.

*Mellon*, 750 F. Supp. at 230-31.

This approach is consistent with our conclusion that placement of underground fiber-optic cables is an incidental use of the railroad right-of-way and does not create an additional burden on the servient estate. The approach urged by Kershaw would create a potential for conflict between the railroad and the owner of the servient estate, who "would not be entitled to authorize a trespass by a utility company onto the surface of the railroad's easement for construction and laying of the cable." Wright & Hester at 414.

Level 3's placement of the fiber-optic cable was an incidental use of the railroad right-of-way that did not create an additional burden on Kershaw's property. The superior court erred in concluding Level 3 trespassed by placing its cable in the right-of-way.

We affirm the superior court's conclusion that the 1905 right-of-way deed conveyed only an easement. We reverse the court's conclusion that Level 3's placement of underground fiber-optic cable was not an incidental use of the right-of-way and that Level 3 was trespassing. We remand the case to the superior court for further action consistent with this decision.

SWEENEY and KURTZ, JJ., concur.

Reconsideration denied July 30, 2004.

Review granted at 153 Wn.2d 1024 (2005).