126 P.3d 16 (2006)
KERSHAW SUNNYSIDE RANCHES, INC., a Washington corporation, Petitioner,
v.
YAKIMA INTERURBAN LINES ASSOCIATION, a Washington non-profit corporation; BNSF Acquisition, Inc., a Delaware corporation; the State of Washington, Defendants,
Level 3 Communications, LLC, a Delaware limited liability company, Respondent, and
The Burlington Northern and Santa Fe Railway Company, a Delaware company, Defendant.
No. 75982-1.
Supreme Court of Washington.
January 12, 2006.
*17 Kevan Tino Montoya, Attorney at Law, Yakima, for Petitioner/Appellant.
James Stephan Berg, James S Berg PLLC, Yakima, Mark C. Laughlin, Fraser Stryker Meusey Olson Boyer & Bloc, Omaha, NE, for Appellee/Respondent.
En Banc.
BRIDGE, J.
¶ 1 Level 3 Communications, L.L.C. (Level 3) is a telecommunications company doing business in Washington State. In an effort to expand its infrastructure, Level 3 installed a fiber optic telecommunication cable on a railroad line in Yakima, Washington. At issue here is Level 3's installation of cable on a railroad right of way transpiercing land belonging in fee to Kershaw Sunnyside Ranches, Inc. Level 3 negotiated and received *18 permission from the line operator and right of way holder, Yakima Interurban Lines Association (Yakima Interurban), and the Burlington Northern and Santa Fe Railway Company (BNSF), which had retained contractual rights to an easement for underground cable but did not receive permission from nor grant compensation to Kershaw Sunnyside Ranches for the installation of the cable line. In response, Kershaw Sunnyside Ranches brought suit seeking to quiet title and alleging trespass, conversion, and statutory and constitutional violations for Level 3's placement of the cable.
¶ 2 The superior court, in two summary judgment orders, found (1) that the 1905 right of way deed between the parties' predecessors in interest conveyed an easement interest in the relevant strip of land and not fee simple title and (2) that Level 3's placement of the fiber optic cable within the right of way constituted a trespass. The Court of Appeals affirmed the first determination, that the deed created an easement interest, but reversed the trespass claim, finding that the presence of the cable was a permissible incidental use for which no additional compensation was due to Kershaw Sunnyside Ranches.
¶ 3 We now affirm in part and reverse in part the Court of Appeals decision. First, like the superior court and the Court of Appeals, we hold that the 1905 deed conveyed only an easement interest in the right of way. Second, we hold that Washington statutes governing telecommunications companies require an eminent domain proceeding in this context and thus reverse the Court of Appeals application of the incidental use doctrine and find the presence of the fiber optic cable constitutes a trespass.

I

Facts and Procedural History
¶ 4 On October 5, 1905, Edward A. (E.A.) and Ora A. Kershaw recorded a right of way deed, memorializing,
NOW THEREFORE, KNOW ALL MEN BY THESE PRESENTS, That we, the said E.A. Kershaw and Ora A. Kershaw . . . for and in consideration of the sum of [$1,000.00] . . . and other good and valuable considerations including the covenants of the [Railway] . . . do hereby give, grant, sell, confirm and convey to the said. . . NORTH YAKIMA & VALLEY RAILWAY COMPANY, a Corporation, its successors or assigns, a strip of land seventy five feet wide, in, along, over and through the hereinafter described land in Yakima County, Washington . . . to he used by [the Railway] as a right of way for a railway forever, together with the perpetual right to construct, maintain and operate a railway or railways over and across the same. Said strip of land being a certain strip of land seventy five feet wide across [setting forth location and referencing as already "staked out."]
Clerk's Papers (CP) at 654. The habendum clause to the deed provides:
TO HAVE AND TO HOLD The said right of way, strip of land, easements, privileges and appurtenances to it, the said NORTH YAKIMA & VALLEY RAILWAY COMPANY, its successors or assigns, forever, Provided, it is understood and agreed that second party its successors or assigns, shall, at its or their own proper cost and expense, provide and maintain over and across said railroad and right of way four suitable and covenants crossings of sufficient width to permit the use thereof of wagons, hay rakes and other ordinary farm machinery, in passing to and from the portions of said premises separated by said railroad and right-of-way, with proper approaches and one of which shall be an open crossing, provided with proper cattle guards, and the others may be provided with convenient and suitable gates, which shall be provided and maintained by second party, its successors or assigns . . . . [A]lso, it is understood and agreed, that second party, its successors or assigns shall erect and maintain a good and lawful fence on each side of its right of way over and across said described premises . . . [and] provide suitable means and ways for conducting over and across its said right of way and under its said railroad, any and all water necessary for the proper irrigation of said premises . . . .

*19 It is understood and agreed that the aforesaid covenants and agreements on the part of second party shall run with said granted right of way and be binding upon said company, and its successors and assigns, so long as a railway may be maintained by it or them, over and across said premises.
CP at 585-87; see also CP 654-55. On June 24, 1914, the North Yakima & Valley Railway Company deeded its interest to the Northern Pacific Railroad, predecessor in interest to BNSF. On February 18, 1999, BNSF and BNSF Acquisition, Inc., by quitclaim deed, conveyed their interest in the rail corridor encompassing the disputed right of way to Yakima Interurban, reserving to itself "an exclusive, permanent easement for construction, reconstruction, maintenance, use and/or operation of one or more longitudinal pipelines for . . . telecommunication or fiber optic communication lines." CP at 589-98.
¶ 5 Level 3 and BNSF then entered into a master right of way agreement whereby BNSF granted Level 3 the right to construct and operate "fiber optic cables on the [railroad right of way] that traverses" the Kershaw Sunnyside Ranches property. CP at 606. On October 22, 1999, Level 3 concluded a construction and restoration agreement with Yakima Interurban, and thereafter installed fiber optic cable approximately 42 inches underground on the railroad right of way.[1] CP at 285, 316, 606, 637.
¶ 6 Over the past century, the Kershaw property has also changed hands but maintained ownership within the family. On January 20, 1960, Ora Kershaw quitclaimed the Kershaw property to her son Ronald E. Kershaw, specifically excepting the "right-of-way of the Northern Pacific Railway," predecessor in interest to BNSF. CP at 731-32. In 1986, Ronald and Betty Kershaw transferred the real property to the family business, Kershaw Sunnyside Ranches. The real estate contract memorializing this transfer, in describing the property conveyed, again excepted from the transfer the "right of way of the Northern Pacific Railway." CP at 726. At the present time, Kershaw Sunnyside Ranches owns approximately 80-90 acres on the site transpierced by the railroad right of way.
¶ 7 On June 15, 2000, Kershaw Sunnyside Ranches filed this action against Level 3, Yakima Interurban, BNSF, and the State seeking to quiet title and alleging trespass, conversion, and violation of RCW 4.24.630 (liability and damages to land and property). On September 28, 2001, Kershaw Sunnyside Ranches amended its complaint to further allege violation of 42 U.S.C. § 1983, chapter 80.36 RCW (telecommunications eminent domain procedure), and article I, section 16 of the Washington Constitution.[2]
¶ 8 Both parties moved for partial summary judgment, and on August 10, 2001, the superior court entered an order finding (1) that the 1905 deed "transferred only a right of way for a railroad, not a fee simple interest," (2) that Level 3 could use the railroad right of way for its fiber optic cable, but must provide just compensation through an eminent domain process, and (3) that the "rail line has not been abandoned." CP at 158-59. Following Kershaw Sunnyside Ranches' subsequent motion for summary judgment on the issue of trespass, on July 2, 2002, the superior court issued an order that Level 3 "did not have the authority to bury its fiber-optic telecommunications cable in the right of way . . . without paying just compensation" to Kershaw Sunnyside Ranches, that the fiber optic cable "[was] not an incidental use of the railroad" right of way, and therefore Level 3 trespassed on plaintiff's property when it buried the cable. CP at 10. As part of the July 11, 2002 order, the judge additionally found that as to the rulings made in that order and the order of August 10, 2001, "there is no just reason for delay" and "expressly determined that a final judgment, as *20 to both Orders, shall issue from which an immediate appeal may be taken." CP at 10; see CR 54(b).
¶ 9 Both parties filed a notice of appeal with Division Three of the Court of Appeals. In response, the Court of Appeals commissioner ordered the case remanded to the trial court with instructions to enter written findings on the issue of appealability "address[ing] the Schiffman/Lindsay factors[3] as set forth in Pepper v. King County, 61 Wash.App. 339, 351-353, 810 P.2d 527 (1991)." CP at 983-84. On remand, the superior court entered an amended order addressing RAP 2.2(d) and the five Schiffman/Lindsay factors as instructed by the commissioner. CP at 972-77.
¶ 10 The Court of Appeals thereafter accepted review and affirmed in part and reversed in part the superior court's rulings. Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n, 121 Wash.App. 714, 725, 737, 91 P.3d 104 (2004). The Court of Appeals held (1) that the trial court did not abuse its discretion in finding "`no just reason for delay'" and in certifying the case as final, (2) that the 1905 deed created only an easement and did not transfer the right of way in fee to the railroad, and (3) that Level 3's placement of the fiber optic cable on the railroad right of way is an incidental use of the right of way which places no additional burden on the servient estate and thus the placement of the cable does not constitute trespass. Id. at 724, 737, 91 P.3d 104.
¶ 11 Kershaw Sunnyside Ranches petitioned this court to review the trial court's CR 54(b) certification and the finding that the cable constituted an incidental use of the right of way easement. Level 3, in its answer, cross-petitioned for review of the Court of Appeals holding that the 1905 deed created only an easement interest. We granted review as to all issues.[4]

II

Deed Conveyances
¶ 12 The parties first dispute the nature of the estate the railroad acquired as the grantee to the 1905 deed. As part of the August 10, 2001 order on summary judgment the trial court ruled that the 1905 deed "transferred only a right of way for a railroad, not a fee simple interest." CP at 158. The Court of Appeals affirmed, holding that the language "`to be used . . . as a right of way for a railway'" specified the purpose of the grant and indicates the creation of only an easement. Kershaw Sunnyside Ranches, 121 Wash.App. at 727, 91 P.3d 104 (quoting CP at 585). It further deemed a reverter clause to exist in the deed and considered that clause to be persuasive evidence the parties intended to create only an easement. Id. Finally, the court concluded the 1960 quitclaim deed between Ora and Ronald Kershaw, and its exception of the railroad right of way, to be consistent with the conclusion that the 1905 deed created only an easement. *21 Id. at 728, 91 P.3d 104. Level 3 asserts that the Court of Appeals erred in finding only an easement interest, noting that statutory warranty deeds are presumed to convey fee simple and contending that Kershaw Sunnyside Ranches has failed to satisfy its burden to show it conveyed a lesser estate. Specifically, Level 3 contends the Court of Appeals erred in failing to apply the seven factors enumerated in Brown v. State, 130 Wash.2d 430, 438, 924 P.2d 908 (1996), which it argues weigh in favor of finding a fee simple conveyance. Kershaw Sunnyside Ranches supports the trial court and Court of Appeals interpretation of the deed.
¶ 13 When construing deeds, our principal aim is to effect and enforce the intent of the parties. See, e.g., Brown, 130 Wash.2d at 437, 924 P.2d 908. Throughout the 20th century, railroad deeds posed a recurring problem for courts, prompting our court to opine that "[t]he authorities are in hopeless conflict" and, in large part, "cannot be reconciled." Swan v. O'Leary, 37 Wash.2d 533, 535, 225 P.2d 199 (1950).[5] In response to these conflicting authorities, in 1950 the Swan court attempted to lay down a bright-line rule governing railroad rights of way by interpreting the then seminal case Morsbach v. Thurston County, 152 Wash. 562, 278 P. 686 (1929)[6] as follows:
We think when [Morsbach] is critically read and considered with the precise question we have before us in mind, it is clear that we adopted the rule that when the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad the deed passes an easement only, and not a fee with a restricted use, even though the deed is in the usual form to convey a fee title.

Swan, 37 Wash.2d at 537, 225 P.2d 199 (emphasis added). The court then applied this principle to find that a quitclaim deed conveying, "for the purpose of a Railroad right-of-way. . . a strip of land 50 feet in width," conveyed only an easement and not a fee interest. Id. at 534, 537, 225 P.2d 199.
¶ 14 In 1979, Veach v. Culp, 92 Wash.2d 570, 599 P.2d 526 (1979) followed the Swan principle when interpreting a deed conveying a "`certain lot, piece, or parcel of land'" and describing the property as a "`right-of-way one hundred feet wide.'" Id. at 572, 599 P.2d 526. Despite explicitly conveying a "certain . . . parcel of land" the court held that the use of the term "right-of-way" in the granting clause trumped the other considerations and reflected intent to create an easement only. Id. at 572-74, 599 P.2d 526.
¶ 15 Again, in 1986, this court considered the effect of a railroad right of way deed. Roeder Co. v. Burlington N., Inc., 105 Wash.2d 567, 716 P.2d 855 (1986). As here, at issue was the extent of the interest the deed conveyed. One of the deeds analyzed in that case conveyed, by statutory warranty deed, a "50-foot-wide strip of property." Id. at 569, 716 P.2d 855. The granting clause specifically conveyed "`for all railroad and other right of way purposes, certain tracts and parcels of land . . . .'" Id. Based on the deed language, the court concluded that "[s]ince the granting clause of the . . . deed declares the purpose of the grant to be a right of way for a railroad, the deed passes an easement, not a fee." Id. at 571, 716 P.2d 855. "[A]bsent persuasive evidence of intent to the contrary," the court found Morsbach, *22 Swan, and Veach compelled it to read the "right of way" purpose language to find only an easement was transferred. Id. at 572, 599 P.2d 526.
¶ 16 Most recently, in 1996, this court again attempted to address the "considerable disarray" of decisions addressing whether particular railroad deeds convey fee simple or easements. Brown, 130 Wash.2d at 437, 924 P.2d 908. In Brown, this court noted the general rule that where a party conveys property via a statutory warranty deed and the granting clause conveys a definite strip of land, courts "must find that the grantor[ ] intended to convey fee simple title unless additional language in the deed[ ] clearly and expressly limits or qualifies the interest conveyed." Id.; see also RCW 64.04.030 ("[e]very deed in [warranty] form . . . shall be deemed and held a conveyance in fee simple to the grantee"). Thus, a party wishing to prove that such a deed conveys only an easement interest has the burden of showing less than fee simple title was intended to be conveyed. Id. at 438, 924 P.2d 908. Attempting to reconcile this presumption with the principle espoused in Roeder, Swan and Morsbach, the court stated that where the deed uses the term "`right of way' as a limitation or to specify the purpose of the grant," such a grant generally conveys only an easement. Id. at 438-39, 924 P.2d 908 (emphasis added) (recognizing that this court has given "special significance to the words `right of way' in railroad deeds"). Thus, Brown established that, generally, when the granting document uses the term "right of way" as a limitation or to define the purpose of the grant, it operates to "clearly and expressly limit[] or qualif[y] the interest conveyed." Id. at 437, 924 P.2d 908.
¶ 17 However, the Brown court partially qualified this rule when, in the following discussion, it stated that, rather than merely "identifying the purpose of the conveyances," reviewing courts should ascertain the parties intent by performing a deed-by-deed inquiry into the interests conveyed based on (1) the particular language of the deed, (2) the form of the deed, and (3) the surrounding circumstances and subsequent conduct of the parties. Id. at 438-40, 924 P.2d 908 (citing Scott v. Wallitner, 49 Wash.2d 161, 162, 299 P.2d 204 (1956)). The court then set forth multiple factors courts should consider in reading railroad deed language:
(1) whether the deed conveyed a strip of land, and did not contain additional language relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed; (2) whether the deed conveyed a strip of land and limited its use to a specific purpose; (3) whether the deed conveyed a right of way over a tract of land, rather than a strip thereof; (4) whether the deed granted only the privilege of constructing, operating, or maintaining a railroad over the land; (5) whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor; (6) whether the consideration expressed was substantial or nominal; and (7) whether the conveyance did or did not contain a habendum clause, and [any] other considerations suggested by the language of the particular deed.
Id. at 438, 924 P.2d 908 (citing Swan, 37 Wash.2d at 535-36, 225 P.2d 199). Thus, this court's most recent exercise in interpreting railroad deeds has continued to place substantial significance on the use of right of way language but also emphasizing consideration of other relevant factors.
¶ 18 Turning to the deed at issue here, according to Morsbach, Swan, Veach, and Roeder, the language in the granting clause purporting to convey a "strip of land seventy five feet wide, in, along, over and through the hereinafter described land in Yakima County, Washington . . . to be used by [the North Yakima Valley Railway Company] as a right of way for a railway forever," CP at 654, presumptively operates to convey an easement only. Brown did not purport to overrule these cases, rather it distinguished them on the limited basis that none of the deeds at issue in Brown possessed language relating to the purpose of the grant or limiting the estate conveyed. 130 Wash.2d at 439-40, 924 P.2d 908. Here, the 1905 deed states that the conveyance is "to be used by [the North Yakima & Valley Railway Company] as a right of way for a railway." CP at 654 *23 (emphasis added). Like the cases finding an easement, and unlike the deeds in Brown, the word "right of way" is used to establish the purpose of the grant and thus presumptively conveys an easement interest.
¶ 19 In this context, this case is nearly indistinguishable from Roeder, where a statutory warranty deed conveying a "strip of property" "`for all railroad and other right of way purposes'" was determined to have created an easement. 105 Wash.2d at 569, 716 P.2d 855. However, Roeder did not end its analysis there, but rather looked to see if persuasive contrary evidence existed. Id. at 572-73, 716 P.2d 855. This is also appropriate here.
¶ 20 Brown refined the principle relied on in Morsbach, Swan Veach, and Roeder and suggests a more thorough examination of the deed is appropriate. Here the deed appears to contain elements characteristic of both a fee and easement conveyance. In short, the deed is in statutory warranty form, which carries a presumption of conveying fee, Brown, 130 Wash.2d at 438, 924 P.2d 908, but contains the words "right of way" in both the granting clause and the habendum clause, which we have stated presumptively evinces the parties' intent to convey only an easement. Roeder, 105 Wash.2d at 569, 571-72, 716 P.2d 855 (applying presumption in favor of easement in spite of statutory warranty nature of deed); Swan, 37 Wash.2d at 537, 225 P.2d 199. We thus consider whether additional analysis of the deed language using the Brown factors, set forth above, sheds any light on the parties' intent.

Application of Brown/Swan Factors
¶ 21 "Strip of Land" v. "Right of Way": Examining the deed in light of the Brown/Swan factors 1 through 4 provides only slight insight.[7] The granting clause purports to convey "a strip of land seventy five feet wide, in, along, over and through" the Kershaw property. CP at 654 (emphasis added). It then establishes that the conveyance is "to be used by [the Railway] as a right of way for a railway forever, together with the perpetual right to construct, maintain and operate a railway or railways over and across the same." Id., (emphasis added). The conveyance most closely resembles the second Brown factor  a deed "convey[ing] a strip of land and limit[ing] its use to a specific purpose." Brown, 130 Wash.2d at 438, 924 P.2d 908. The 1905 deed explicitly conveyed a certain "strip of land" but specifically set forth that it was "to be used . . . as a right of way." CP at 654. The use of the "right of way" language to describe the purpose of the conveyance evinces intent to convey an easement. Cf. Roeder, 105 Wash.2d at 571-72, 716 P.2d 855.[8] Therefore, consistent with the Swan presumption, consideration of these first four factors favors the creation of an easement interest. Swan, 37 Wash.2d at 537, 225 P.2d 199; see also Brown, 130 Wash.2d at 438-39, 924 P.2d 908 (affirming the "special significance to the words `right of way' in railroad deeds").
¶ 22 Reverter Clause: The fifth factor instructs that the presence of a reverter clause is strong evidence an easement was intended. The Court of Appeals deemed the deed's final paragraph to be "a reverter clause that expressly states the grant would remain in effect only `so long as a railway may be maintained' by the railroad." Kershaw Sunnyside Ranches, 121 Wash.App. at 728, 91 P.3d 104 (quoting CP at 587). In reaching this conclusion, the Court of Appeals ignored the context of this phrase and the other relevant language in the deed. In fact, the phrase relied on by the Court of Appeals is immediately preceded by a detailed listing of covenants agreed to by the North Yakima & Valley Railway Company. These include covenants that the railway or its successors, at their own expense, will construct and maintain specific crossings, erect and maintain a fence, provide means *24 for transferring water over the right of way sufficient for all irrigation, and construct and maintain a spur. CP at 655. The deed then concludes that "the aforesaid covenants and agreements on the part of [the North Yakima & Valley Railway Company] shall run with said granted right of way and be binding upon said company, and its successors and assigns, so long as a railway may be maintained by it or them, over and across said premises." Id. By its plain language the phrase relied on by the Court of Appeals relates only to the North Yakima & Valley Railway Company's covenants, not the railway's use of the right of way. The 1905 deed does not contain a reverter clause. Thus, this factor is inapplicable in this instance and does not favor one interpretation over the other.
¶ 23 Consideration: Next we examine whether the consideration was substantial. Here, the North Yakima & Valley Railway Company paid the Kershaws $1,000 for the right of way. CP at 654. In 1905, this was likely a substantial sum. Cf. Brown, 130 Wash.2d at 444, 924 P.2d 908 (finding $1,310 to be substantial).[9] While the record lacks detail regarding the actual value of the easement versus fee, the amount of monetary consideration here favors a fee, although not conclusively so. See Brown, 130 Wash.2d at 442, 924 P.2d 908 (giving little weight to this factor when value of easement or fee simple cannot be ascertained from the record).
¶ 24 Habendum Clause: The seventh factor requires us to examine the language used in the habendum clause. Here, the habendum clause recites that E.A. and Ora Kershaw conveyed "TO HAVE AND TO HOLD the said right of way, strip of land, easements, privileges and appurtenances to it, the said North Yakima & Valley Railway Company, its successors or assigns, forever." CP at 654-55. The use of both "right of way" and "strip of land" in this clause could be construed as presenting an ambiguity. Id. However, by reciting "right of way, strip of land, easements, privileges and appurtenances to it," id., it more reasonably attempts to convey a fee by encompassing all the potential sticks in the bundle. Thus, we conclude the habendum clause favors finding a conveyance of fee title.
¶ 25 Other Language: Finally, we look to any other language in the deed which is indicative of the parties' intent. The deed contains language in both the granting and habendum clause which implies the North Yakima & Valley Railway Company, and its successors in interest, acquired the strip of land in perpetuity.[10] It is impossible to tell from the deed itself whether this language is indicative of a fee or simply intends to create a perpetual easement. See Swan, 37 Wash.2d at 534, 225 P.2d 199 (court finds easement even though deed also conveyed "strip of land" "forever"  although conveyance was by quitclaim deed rather than warranty deed). Thus, it is inconclusive.
¶ 26 The language most indicative of an easement is the phrase, in the granting clause, which recites that the Kershaws also granted the North Yakima & Valley Railway Company "the perpetual right to construct, maintain and operate a railway or railways over and across the same." CP at 654. If the Kershaws intended to grant fee title to the land, there would have been no need to also grant any rights associated with the land, as the North Yakima & Valley Railway Company would have owned those rights due solely to their status as fee holders. However, if only an easement was intended, it makes sense that that language was included to specify the rights which attached to the land and the agreed-to, permissible use of the same.
¶ 27 In sum, Brown establishes that use of a statutory warranty deed creates a presumption that fee simple title is conveyed. However, our previous cases, which Brown does not overrule, and in fact incorporates, establish that whether by quitclaim or *25 warranty deed, language establishing that a conveyance is for right of way or railroad purposes presumptively conveys an easement and thus provides the "additional language" which "expressly limits or qualifies the interest conveyed." Brown, 130 Wash.2d at 437, 924 P.2d 908. In examining the language of the deed, while there is some conflicting language, there is insufficient evidence to overcome the presumption that an easement was created.[11] In fact, the language, specifically granting the railroad the "right to construct, maintain and operate a railway or railways over and across the same" strongly supports the presumption in favor of an easement. CP at 654. This conclusion is consistent with Mosbach, Swan, Veach, and Roeder and at the same time maintains Brown's instruction that reviewing courts perform a thorough examination of railroad deeds based on Brown's enumerated factors.[12] While the use of the term "right of way" in the granting clause is not solely determinative of the estate conveyed, it remains highly relevant, especially given the fact that it is used to define the purpose of the grant. Weighing the other language in the deed, we find the language of the 1905 deed suggests the parties' intent to convey only an easement interest to the railroad. We thus affirm the Court of Appeals decision that Yakima Interurban possesses an easement interest in the right of way.

Effect of Exception in 1960 Deed
¶ 28 A separate question regarding Kershaw Sunnyside Ranches' standing with respect to the right of way arises from the 1960 deed. Specifically, Level 3 asserts that Kershaw Sunnyside Ranches has no interest in the right of way, contending any potential interest was not conveyed in the 1960 deed passing title from Ora Kershaw to her son, Ronald Kershaw, because it excepted the "right-of-way of the Northern Pacific Railway."[13] CP at 731-32.
¶ 29 "[W]hen construing a deed, the intent of the parties is of paramount importance." Brown, 130 Wash.2d at 437, *26 924 P.2d 908. In addition, ambiguity in a deed is resolved against the grantor. Harris, 120 Wash.2d at 745, 844 P.2d 1006. In holding that Kershaw Sunnyside Ranches was the servient property owner, the trial court implicitly found that Ora Kershaw did not intend to reserve her interest in the railroad right of way and all her interest transferred to her son.[14] Here, Level 3 relies on Harris v. Ski Park Farms, Inc., where we held that a similar exception in a deed did operate to reserve the grantor's interest in the right of way. 120 Wash.2d 727, 746, 844 P.2d 1006 (1993). However, Harris contained evidence of the grantor's intent to except the right of way not present here, most specifically the grantor's subsequent conveyance of the right of way to a third party and the grantor's broker's declaration that the grantor intended to reserve its interest in the right of way. Id. at 735, 742, 744, 844 P.2d 1006.
¶ 30 As the Court of Appeals points out, the 1960 deed's exception is ambiguous; in addition to operating to reserve an interest in the grantor, it "logically could have been an expression of the parties' understanding that Ronald Kershaw's fee interest was subject to the railroad's easement." Kershaw Sunnyside Ranches, 121 Wash.App. at 728, 91 P.3d 104. This later interpretation is supported by Ora Kershaw's further "except[ion]" of a road and state highway. CP at 731. While the deed purports to except these lands, it could just as reasonably be interpreted to reference them because of the significant nature of the easements present.[15] Here the circumstances of the transfer, one from mother to son, suggest a conveyance of the entire property was intended. Moreover, unlike in Harris, there is no evidence in the record that Ora Kershaw intended to reserve any interest in the property nor that she later attempted to convey that interest. Recognizing that the trial court found an intent to transfer the underlying interest, resolving the apparent ambiguity against the grantor, and finding no intent akin to that present in Harris, we hold Ora Kershaw intended to quitclaim all her interest in the Kershaw property and did not intend to reserve to herself any interest in the railroad right of way.
¶ 31 We thus hold that the 1905 deed conveyed an easement to the railroad and not fee simple. Additionally, we hold that Ora Kershaw, by the 1960 deed, did not reserve in herself any rights in the right of way and that all said rights transferred to her son and then to Kershaw Sunnyside Ranches.

III

Trespass Claim
¶ 32 Finally, we determine whether the underground cable on the Kershaw Sunnyside Ranches property constitutes a trespass. The parties expend much energy disputing the application of the incidental use doctrine. The incidental use doctrine "states that a railroad may use its easement to conduct not only railroad-related activities, but also any other incidental activities that are not inconsistent and do not interfere with the operation of the railroad." Danaya C. Wright & Jeffrey M. Hester, Pipes, Wires, and Bicycles: Rails-to-Trails, Utility Licenses, and the Shifting Scope of Railroad Easements from the Nineteenth to the Twenty-First Centuries, 27 ECOLOGY L.Q. 351, 421 (2000) (Wright & Hester). The doctrine's underpinning lies in the unique nature of railroad right of way easements, *27 which often are deemed to include "`exclusive control of all the land within the lines.'" Id. (quoting Grand Trunk R.R. Co. v. Richardson, 91 U.S. (1 Otto) 454, 468, 23 L.Ed. 356 (1875)).
¶ 33 The trial court rejected Level 3's contention that the fiber optic lines were an incidental use. Centering its analysis on whether the "incidental use" is reasonably necessary to the operation of the railroad, and finding that "[i]ncidental rights should be limited to facilitating construction, maintenance and operation of the railroad," CP at 18, the trial court determined that the buried fiber optic line here is not an incidental use. Id. at 974. It thus concluded that Level 3's line constituted a trespass. Id. at 19, 974.
¶ 34 The Court of Appeals found no trespass and rejected the trial court's strict reliance on the relationship between the alleged incidental use and railroad operations. Rather, it held that the incidental use doctrine applies so long as "the use is `not . . . inconsistent with the public use to which the highways are dedicated,'" Kershaw Sunnyside Ranches, 121 Wash.App. at 733, 91 P.3d 104 (quoting State ex rel. York v. Bd. of County Comm'rs, 28 Wash.2d 891, 905, 184 P.2d 577 (1947)), and further that revenue from such placement "indirectly serves a railroad purpose." Id. The focus of the Court of Appeals decision then was whether the incidental use created an additional burden on the servient estate; it concluded it did not. Id. at 733-37, 91 P.3d 104. In sum, the trial court and Court of Appeals conducted very different analyses in determining whether a trespass occurred; the trial court framed the issue as whether the cable was within the scope of the original easement as reasonably necessary to further a railroad purpose while the Court of Appeals framed the issue as whether the cable created an additional burden on the servient fee owner.
¶ 35 Before considering the conflicting views of the common law incidental use doctrine suggested by the parties and employed by the lower courts, we should first examine our relevant constitutional and statutory provisions. The right of telecommunications companies to lay their lines in railroad rights of way is both constitutionally and statutorily based. In an apparent effort "to ensure the development of communications systems in Washington,"[16] the Washington Constitution makes two explicit allowances for telecommunication companies. First, it provides that "[r]ailroad corporations organized or doing business in this state shall allow telegraph and telephone corporations and companies to construct and maintain telegraph lines on and along the rights of way of such railroads and railroad companies." CONST. art XII, § 19. Second, it extended the right of eminent domain to all telegraph and telephone companies. Id. Finally, the constitution provides that "[t]he legislature shall, by general law of uniform operation, provide reasonable regulations to give effect to this section." Id.
¶ 36 In exercise of this constitutional authority and mandate, our legislature has enacted legislation executing article XII, section 19 by designating railroads as "`post roads'" and requiring railroad corporations to permit telecommunication companies to maintain lines on the right of way. RCW 80.36.050. Additionally, our legislature established that,
[a]ny telecommunications company, or the lessees thereof, doing business in this state, shall have the right to construct and maintain all necessary telecommunications lines for public traffic along and upon any public road, street or highway, along or across the right-of-way of any railroad corporation, and may erect poles, posts, piers or abutments for supporting the insulators, wires and any other necessary fixture of their lines, in such manner and at such points as not to incommode the public use of the railroad or highway, or interrupt the navigation of the waters: PROVIDED, That when the right-of-way of such corporation has not been acquired by or through any grant or donation from the United States, or this state, or any county, city or town therein, then the right to construct and maintain such lines shall be secured *28 only by the exercise of right of eminent domain, as provided by law. . . .
RCW 80.36.040. The qualifying section of RCW 80.36.040, beginning with the words "PROVIDED, That" defines the scope of the telecommunication companies' rights. It establishes that when the railroad has acquired rights to a certain right of way through a government grant, a telecommunications company "shall have the right to construct and maintain all necessary telecommunications lines" along or across that railroad right of way. Id. However, if the railroad did not acquire the particular right of way via a government grant, i.e., a private party conveyed the right of way to the railroad by deed, then the "right to construct and maintain such lines shall be secured only by the exercise of right of eminent domain, as provided by law."[17]Id. (emphasis added).
¶ 37 Applying these constitutional and statutory principles to Level 3's fiber optic cable on the right of way transpiercing the Kershaw Sunnyside Ranches' property, it is evident that RCW 80.36.040 obligated Level 3 to exercise its eminent domain powers to secure the right to lay its line.[18] E.A. and Ora Kershaw privately deeded the right of way to the North Yakima & Valley Railway Company and as such the proviso to RCW 80.36.040 controls. This explicit statutory framework, rather than the alternative common law "incidental use doctrine," governs our analysis. Absent the clarifying language in RCW 80.36.040, the Court of Appeals analysis may be sufficiently compelling to find the telecommunications cable an incidental use and conclude no compensation was due Kershaw Sunnyside Ranches; however its presence dictates the result here. Level 3 was required to exercise its eminent domain powers in securing the right to construct and maintain its lines on the railroad right of way. In so doing, the railroad's property rights and those of the fee owner would have been taken into account as "each and every owner, encumbrancer or other person" are parties to an eminent domain proceeding, and all their interests and potential damages are discerned. RCW 8.20.010, .080.
¶ 38 Based on statutes governing this exact circumstance, giving effect to article, XII, section 19 of the Washington Constitution, we reverse the Court of Appeals on this issue.[19] The unambiguous language of RCW 80.36.040 requires an eminent domain proceeding in this context. Therefore, we affirm the trial court's conclusion that, absent an eminent domain action, Level 3's placement of the fiber optic cable within the right of way constituted a trespass.[20],[21] It certainly is possible that no additional burden will be imposed on the servient estate and only nominal *29 if any damages would be found, yet that is a factual determination to be made in such a proceeding and not here.
¶ 39 We thus reverse the Court of Appeals and hold that because BNSF's predecessor in interest did not receive the railroad right of way through a government grant Level 3 was required to exercise its eminent domain powers before laying the fiber optic cable within the right of way. The current presence of the lines constitutes a trespass.

IV

Motion to Strike
¶ 40 In its supplemental brief, Level 3 cites to and discusses a recent decision of the federal Surface Transportation Board (STB) denying Kershaw Sunnyside Ranches' application for adverse abandonment. Yakima Interurban Lines Ass'n  Adverse Abandonment  In Yakima County, WA, 2004 STB LEXIS 741 (Nov. 19, 2004). Kershaw Sunnyside Ranches moves this court to strike this reference as facts not presented to the trial court, irrelevant, and an inappropriate citation to an unpublished opinion. Level 3 defends its use of the STB decision by pointing out that the STB has exclusive jurisdiction over rail line abandonment and further asserts the citation reflects legal authority not impermissible facts not in the record. We have recently stated that "we cannot, while deciding one case, take judicial notice of records of other independent and separate judicial proceedings even though they are between the same parties." In re Adoption of B.T., 150 Wash.2d 409, 415, 78 P.3d 634 (2003) (in review of adoption proceedings court declined to take judicial notice of superior court order in dependency action of same child). We thus grant Kershaw Sunnyside Ranches' motion to strike.

V

Conclusion
¶ 41 We affirm in part and reverse in part the Court of Appeals decision. First, we affirm the Court of Appeals conclusion that the 1905 deed conveyed an easement interest to North Yakima & Valley Railway Company and that the 1960 deed from Ora to Ronald Kershaw does not indicate otherwise nor reserve the interest in the right of way to Ora Kershaw. Next, as to the placement of the telecommunications line, we reverse the Court of Appeals and hold that RCW 80.36.040 legally obligated Level 3 to institute an eminent domain proceeding prior to burying its line, and the current placement of such line, absent such a proceeding, constitutes a trespass. We remand to the superior court for further proceedings.
ALEXANDER, C.J., SANDERS, FAIRHURST, CHAMBERS and J.M. JOHNSON, JJ., concur.
MADSEN, J. (dissenting).
¶ 42 Although the majority claims that it merely "builds" upon Justice Charles Johnson's comprehensive approach in Brown v. State, 130 Wash.2d 430, 924 P.2d 908 (1996), majority at 21 n.5, that is unfortunately not true. Instead it tears down the framework constructed there. Brown's analysis provides a framework for resolving the question whether a grant in a deed to a railway is of an easement or fee simple interest. The crucial starting point is the presumption that "where the original parties utilized the statutory warranty form deed and the granting clauses convey definite strips of land, [the court] must find that the grantors intended to convey fee simple title unless additional language in the deeds clearly and expressly limits or qualifies the interest conveyed." Id. at 437, 924 P.2d 908 (emphasis added). Whether a property owner has met the burden of showing intent that an easement, instead, has been conveyed, and thus has overcome the presumption, is determined according to a three-part analysis identified in Brown. This inquiry includes, among other things, examination of any language that relates to purpose or use or otherwise limits the conveyance, as well as language indicating conveyance of a right of way rather than a strip of land. Id. at 438, 924 P.2d 908. Thus, the parties' use of the words "right of way" in a deed is accounted for in Brown's analysis.
¶ 43 The majority expressly recognizes that Brown "has largely reconciled the conflicting *30 presumptions and case law" that had previously led to disarray and conflicting decisions in this area. Majority at 21 n.5. But the majority then proposes the existence of two opposing presumptions, i.e., the presumption in Brown that a fee simple has been conveyed arising from use of a statutory warranty deed form and language conveying a strip of land, and a second presumption not included in Brown, i.e., that an easement has been conveyed arising from use of the words "right of way" in the granting and habendum clauses. Both presumptions cannot be applied in the same case in any coherent way, because if there is no other evidence of intent contrary to the presumption, the presumption dictates the result. This must be so because, in a case like this one, the first presumption would lead to the conclusion that a fee simple interest was conveyed, while the second presumption would lead to the conclusion that an easement interest was conveyed.
¶ 44 The majority thus embraces conflicting presumptions and so returns the law to the state of disarray that preceded Brown. Given that the court in Brown exhaustively examined the case law in this area and carefully and thoughtfully set forth an analysis designed to provide for consistent, thorough, and careful decision making, it is unfortunate that the majority departs from Brown under the guise of "building" on that analysis.
¶ 45 Not only is the majority's approach inconsistent with Brown, it is inconsistent with legislative intent. RCW 64.04.030, which provides the form for a statutory warranty deed, states, like its predecessor statutes did, that a warranty deed substantially in the form provided and "`duly executed, shall be deemed and held a conveyance in fee simple.'" See also Darrin v. Humes, 60 Wash. 537, 538, 111 P. 767 (1910) (citing and quoting Rem. & Bal.Code § 8747 (a predecessor to RCW 64.04.030) which stated that "`a warranty deed, when "duly executed," shall be deemed and held a conveyance in fee simple'"); LAWS OF 1886, § 3, at 177-78 (same language). Thus, when this court in Brown declared that the starting presumption for a deed in statutory warranty form is that a fee simple was conveyed, it carried out the intent manifest in the warranty deed statute.[1] But the majority, in concluding that use of the words "right of way" gives rise to a second presumption that trumps the presumption of a fee simple conveyance, ignores long standing express legislative intent.
¶ 46 Finally, the majority's approach is unnecessary. As mentioned, the analysis set out in Brown adequately addresses the effect of the parties' use of the words "right of way" in the deed and provides for consideration of whether use of these words shows intent to convey an easement. There is no need to resort to a second presumption arising from use of those words in the granting and habendum clauses.
¶ 47 Correct application of the framework in Brown, beginning with the presumption that a fee simple interest was conveyed and then considering all the factors and circumstances that the court identified in Brown for deciding whether that presumption has been overcome, leads to the conclusion that the original parties to the 1905 deed intended that the deed convey a fee simple interest, not an easement. Accordingly, I dissent.
¶ 48 Moreover, even if one assumes for the sake of argument that an easement rather than a fee was conveyed, the installation by Level 3 Communications, LLC (Level 3) of a fiber optic telecommunication cable on the railroad line was a permissible incidental use for which no additional compensation was due to Kershaw Sunnyside Ranches, Inc. (Kershaw). The majority's conclusion that the incidental use doctrine does not apply rests on its erroneous view that a proviso in RCW 80.36.040 applies and requires Level 3 to exercise the right of eminent domain before installing underground lines along the right of way. But the proviso does not apply where it is the railroad's right to use its "easement" that is at issue, as here, rather than a telecommunications company's right to utilize the right of way.

*31 ANALYSIS
¶ 49 It is undisputed that the 1905 deed between the parties' predecessors in interest was in the form of a statutory warranty deed. The deed conveyed "a strip of land seventy five feet wide, in, along, over and through the hereinafter described land . . . [s]aid strip of land being a certain strip of land seventy five feet wideacross" and describing the location of the land. Clerk's Papers (CP) at 654. Thus, the deed carries the presumption of a conveyance of a fee simple interest because it was in the form of a statutory warranty deed and conveyed a definite strip of land. See Brown, 130 Wash.2d at 437, 924 P.2d 908; RCW 64.04.030. Accordingly, the question is whether there is sufficient evidence to overcome this presumption and show that the conveyance of an easement, instead, was intended. This determination is to be made by applying the three-part analysis set out in Brown. First, the language of the deed is examined under factors set out in Brown and derived from Swan v. O'Leary, 37 Wash.2d 533, 535, 225 P.2d 199 (1950). Significantly, the court in Brown, specifically and expressly said that these factors must be considered to determine "whether the property owners have met their burden of showing that the original parties intended to adapt the statutory form to grant" an easement rather than a fee simple. Brown, 130 Wash.2d at 438, 924 P.2d 908 Thus, the court in Brown contemplated that these factors are not, contrary to the majority's characterization, majority at 22, mere guidelines for reading railroad deed language, but instead they are utilized to decide whether the presumption that a fee simple was conveyed has been overcome.
¶ 50 The factors are:
(1) whether the deed conveyed a strip of land, and did not contain additional language relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed; (2) whether the deed conveyed a strip of land and limited its use to a specific purpose; (3) whether the deed conveyed a right of way over a tract of land, rather than a strip thereof; (4) whether the deed granted only the privilege of constructing, operating, or maintaining a railroad over the land; (5) whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor; (6) whether the consideration expressed was substantial or nominal; and (7) whether the conveyance did or did not contain a habendum clause, and many other considerations suggested by the language of the particular deed.
Brown, 130 Wash.2d at 438, 924 P.2d 908 (citing Swan, 37 Wash.2d at 535-36, 225 P.2d 199). In addition to applying these factors and considering the language of the deed, a court must also consider the circumstances surrounding the execution of the deed and the subsequent conduct of the parties to decide whether the presumption of a fee simple conveyance has been overcome. Id.
¶ 51 Turning first to the language of the deed and considering the first and second Brown-Swan factors, the deed conveys a definite strip of land, 75 feet wide. The granting clause also states that the land is "to be used . . . as a right of way for a railway forever, together with the perpetual right to construct, maintain and operate a railway or railways over and across the same." CP at 654. Use of the term "right of way," in and of itself, does not establish intent to grant an easement only because "a railroad can own rights of way in fee simple or as easements." Brown, 130 Wash.2d at 440, 924 P.2d 908. However, if the term is used to mean a limitation on the use of the property, then it may indicate intent to convey an easement. Brown, 130 Wash.2d at 440-41, 441-42, 924 P.2d 908. There is thus ambiguity in the granting clause because while it describes conveyance of a strip of land, it also refers to use of a right of way for railroad purposes. With respect to the third factor, however, and conversely, the deed did not convey merely a right of way over a tract of land but instead conveyed a definite strip of land.
¶ 52 Given such ambiguity, the use of the term "right of way," even as a limitation on use of the land, does not necessarily favor the conclusion that an easement was conveyed. Instead, Brown is clear that while such language may determine the outcome in a particular case, the outcome depends upon *32 all of the language in the deed considered in light of the Brown-Swan factors, the circumstances surrounding the execution of the deed, and the subsequent conduct of the parties. It must be remembered that while the court in Brown recognized that language respecting a grant of a right of way for the purpose of a railway is significant, and may indicate intent that an easement has been conveyed, Brown does not state that any presumption of an easement thereby arises. Brown in fact contemplates that the court will no longer rely on conflicting presumptions as the majority unfortunately does. Instead, Brown emphasizes, as does the warranty deed statute, RCW 64.04.030 and its predecessors, that the starting point in this case is the presumption that a fee simple interest was conveyed.
¶ 53 Turning to the fourth factor, while the granting clause states that the railroad is granted the "right to construct, maintain and operate a railway" over the land, the deed does not state that only this privilege is granted. As to the fifth factor, there is no language in the deed providing that if the railroad ceased to operate, the land would revert to the grantor.[2] The absence of a reverter clause does not render this Brown-Swan factor inapplicable, contrary to the majority's view, majority at 23-24, but instead favors the conclusion that a fee simple interest was conveyed. Indeed, the deed here not only does not contain a reverter clause, it affirmatively states that the land is to be held by the grantee, its successors or assigns "forever." CP at 654. The sixth factor concerns the consideration for the conveyance. Here, the consideration expressed, $1,000, was a substantial amount of money in 1905 when the deed was executed. See Brown, 130 Wash.2d at 444, 924 P.2d 908 (consideration of $1,310 expressed in a deed executed between 1906 and 1910 was substantial). The seventh factor relates to whether a habendum clause exists. The 1905 deed contains a habendum clause that favors conveyance of a fee simple because it recites that the grantors conveyed "TO HAVE AND TO HOLD the said right of way, strip of land, easements, privileges and appurtenances to it. . . forever." CP at 654-55 (emphasis added). The majority agrees this factor favors the grant of a fee simple interest. In addition, the deed sets out obligations of the railroad to construct and maintain crossings over the strip of land. As the court in Brown, observed, such securing of easements to the grantors is consistent with conveyance of a fee simple and would likely be unnecessary if the railroad only held a right of way as an easement. Brown, 130 Wash.2d at 442 n. 9, 924 P.2d 908.
¶ 54 Contrary to the majority's conclusion, application of the Brown-Swan factors to the language of the deed does not lead to the conclusion that the presumption that a fee simple interest was conveyed has been overcome. This is particularly so given the conveyance of a definite strip of land, the affirmation that the strip of land was to be held by the grantee, its successors and assigns "forever," and the substantial consideration expressed in the deed. The parties have not presented evidence of any circumstances surrounding the execution of the deed or subsequent conduct of the parties that overrides the presumption either.[3]
¶ 55 I would hold that the 1905 deed conveyed a fee simple interest.
¶ 56 Even if, however, one assumes that an easement was conveyed instead, Level 3's installation of underground fiber optics cables *33 along the railroad right of way is a permitted use under the incidental use doctrine. The majority, however, misapplies RCW.80.36.040 to preclude the cable installation absent Level 3's exercise of the right of eminent domain. The problem with the majority's approach is that it mixes up the rights of telecommunications companies and the separate rights of railroad companies.
¶ 57 Under article XII, section 19 of the Washington Constitution a telecommunications company has the right to construct and maintain telegraph and telephone lines within the state through the power of eminent domain. RCW 80.36.010 implements this constitutional grant of eminent domain power. RCW 80.36.030 provides that telecommunications companies may appropriate land necessary for its telecommunications lines, including portions of railroad companies' rights of way. RCW 80.36.040 provides that telecommunications companies have the right to construct and maintain telecommunications lines for public traffic on any public road, street or highway and along any railroad corporations' rights of way. RCW 80.36.050 declares that every railroad operating in the state is a "post road" and the corporation or company owning the railroad must allow telephone and telegraph companies to construct and maintain lines along the right of way. The proviso in RCW 80.36.040 relied on by the majority provides, however, that if the grant of a right of way to the railroad was not a public grant, the right to construct and maintain lines along the railroad right of way can be obtained only through exercise of the power of eminent domain.
¶ 58 In contrast, the incidental use doctrine concerns the right of a railroad company to use its easement to conduct not only railroad related activities, but also any other incidental activities that are not inconsistent with and do not interfere with the operation of the railroad. DANAYA C. WRIGHT & JEFFREY M. HESTER, Pipes, Wires, and Bicycles: Rails-to-Trails, Utility Licenses, and the Shifting Scope of Railroad Easements from the Nineteenth to the Twenty-First Centuries, 27 ECOLOGY L.Q. 351, 421 (2000). Thus, where a railroad company enters an agreement with a third party telecommunications company to install fiber optic cable along the railroad's right of way, the question is not whether the telecommunications company has lawfully exercised its right to install the cable, but rather whether the railroad company has lawfully exercised its right as holder of the easement to permit an incidental use of its right of way. A different question would be presented if the railroad company did not agree to installation of the cable  in such a case the provisions of the constitution and the statutes regarding a telecommunications company's right to install the cable along a railroad's right of way would come into play, and whether the telecommunications company would need to exercise the right of eminent domain would depend upon whether the grant of the right of way to the railroad was a public grant.
¶ 59 As a result of confusing the two distinct rights, the majority has applied a statutory proviso that does not apply in this case at all.
¶ 60 Because the proviso in RCW 80.36.040 does not apply, the question remains whether installation of fiber optic cable is a use that is permitted under the incidental use doctrine. Underlying the incidental use doctrine as it applies to railroad rights of way is the principle that such rights of way are unique and often include "`exclusive control of all the land within the lines.'" WRIGHT & HESTER, 27 ECOLOGY L.Q. at 421 (quoting Grand Trunk R.R. Co. v. Richardson, 91 U.S. 454, 468, 23 L.Ed. 356 (1875)); see Morsbach v. Thurston County, 152 Wash. 562, 569, 278 P. 686 (1929) ("[a] railroad right of way is a very substantial thing . . . more than a mere right of passage. . . more than an easement"); N. Pac. Ry. Co. v. Tacoma Junk Co., 138 Wash. 1, 6, 244 P. 117 (1926) (quoting Roby v. N. Y. Cent. & Hudson River R. Co., 142 N.Y. 176, 180, 36 N.E. 1053 (1894), with approval for the proposition that the owner of the railroad easement is "`entitled to the exclusive use, possession, and control of the land, and the owner of the fee has no right to use, occupy, or interfere with the same in any manner whatever'").
*34 ¶ 61 In State ex rel. York v. Board of County Commissioners, 28 Wash.2d 891, 903, 184 P.2d 577 (1947), the incidental use doctrine was applied in this state to public highway rights of way. There, fee owners over whose property certain streets and roads ran as easements sought a writ of mandamus compelling a county board to rescind franchise agreements that allowed an electric company to install power lines on the public roads. The court held that highways are dedicated to the public use, and "[s]ubject to this primary use, highways may be put to any of the numerous incidental uses suitable to public thoroughfares, and with those uses the owner of the abutting land has no right to interfere." Id. at 903, 184 P.2d 577. The court explained that for the incidental use doctrine to apply, the use "must have some element of public benefit, and must not be inconsistent with the public use to which the highways are dedicated." Id. at 905, 184 P.2d 577. The landowners are entitled to compensation only if the incidental use creates an "unreasonable encroachment" on their interests. Id. at 903, 184 P.2d 577.
¶ 62 While the parties have not cited Washington cases where the incidental use doctrine has been applied to railroad rights of way, the doctrine should apply. RCW 80.36.050 designates railroad rights of way as "post roads," as noted. The legislature has thus equated them to public roads and high ways. This court has also treated railroad rights of way as "public highway[s], created for public purposes." Lawson v. State, 107 Wash.2d 444, 449, 730 P.2d 1308 (1986) (citing Puget Sound Elec. Ry. Co. v. R.R. Comm'n, 65 Wash. 75, 84, 117 P. 739 (1911)). By analogy to cases involving public high ways, installation of fiber optic cable along a railroad right of way is an incidental use that imposes no additional burden on the servient estate. See McCullough v. Interstate Power & Light Co., 163 Wash. 147, 148, 150-51, 300 P. 165 (1931) (installation along public high ways of poles and wires for carrying electricity is an incidental use for public highways and poses no additional burden on servient estate). Fiber optic cable lines have an element of public benefit, and their installation is not inconsistent with the public use to which railroad rights of way are dedicated. Given the railroad's exclusive right to use its easement, no additional burden is imposed on the servient estate. Other courts have concluded that installation of fiber optic cable along a railroad right of way does not exceed the scope of the easement or constitute an additional burden on the servient estate. See, e.g., Int'l Paper Co. v. MCI Worldcom Network Servs., 202 F.Supp.2d 895, 899-903 (W.D.Ark.2002); Hynek v. MCI World Communications, 202 F.Supp.2d 831, 834-39 (N.D.Ind.2002); Mellon v. S. Pac. Transp. Co., 750 F.Supp. 226, 229-31 (W.D.Tex.1990).
¶ 63 I would hold that the installation of fiber optic cable along the right of way is a permitted incidental use, and that therefore the installation of the underground cable along the right of way did not constitute a trespass. Level 3 was not required to exercise its eminent domain power before laying the fiber optic cable within the right of way.
¶ 64 For the reasons stated, I dissent from the majority opinion.
C. JOHNSON and OWENS, JJ., concur.
NOTES
[1] The trial court correctly noted that discussion of subsurface rights is irrelevant to the issues presented here. See CP at 9.
[2] Level 3 contends here that because Kershaw Sunnyside Ranches failed to plead a taking occurred, it cannot do so on appeal. However, the first amended complaint clearly argues that the fiber optic line constituted a taking of the Kershaw property "without just compensation" citing to both the fifth amendment to the United States Constitution and article I, section 16 of the Washington Constitution. CP at 863-64.
[3] See Schiffman v. Hanson Excavating Co., 82 Wash.2d 681, 687, 513 P.2d 29 (1973); Lindsay Credit Corp. v. Skarperud, 33 Wash.App. 766, 772, 657 P.2d 804 (1983).
[4] As a preliminary matter regarding the procedural issue, the parties dispute whether the superior court's August 10, 2001 and July 11, 2002 partial summary judgment orders were properly appealable. See CP at 8-11, 154-59. The trial court certified the orders as final pursuant to CR 54(b), permitting an immediate appeal. Kershaw Sunnyside Ranches asserts that the "novel issue" this case raises does not support an appeal under CR 54(b), and further that no "danger of hardship or injustice" was alleviated by an immediate appeal. Pet. for Review at 11-12 (citing Doerflinger v. New York Life Ins. Co., 88 Wash.2d 878, 882, 567 P.2d 230 (1977)). Level 3 counters that Kershaw Sunnyside Ranches has failed to show the trial court abused its discretion in finding "no just reason for delay." While there is some doubt as to whether CR 54(b) and RAP 2.2(d) were properly invoked in this case, these issues are not jurisdictional and do not prevent us from addressing the merits. Cf. Glass v. Stahl Specialty Co., 97 Wash.2d 880, 882-83, 652 P.2d 948 (1982) (court sua sponte raised the issue of appealability under CR 54(b) and found that the trial court's decision was not final but nevertheless treated the case as one for discretionary review and rendered a decision on the merits). See also RAP 2.3(b).

In spite of the above dispute, the Court of Appeals nevertheless had authority to accept review pursuant to RAP 2.3(b), we have granted review of that decision, and we thus now decline Kershaw Sunnyside Ranches' plea to this court to dismiss this case solely on procedural grounds. Cf. Glass, 97 Wash.2d at 882-83, 652 P.2d 948.
[5] Nevertheless, this court's consistent focus has been to enforce the "intent of the parties" which we have deemed "of paramount importance." Brown, 130 Wash.2d at 437, 924 P.2d 908. The analytical approach espoused in Brown, while often fact determinative, has largely reconciled the conflicting presumptions and case law and, remaining focused on "the intent of the parties," we build upon that approach today. Id.
[6] Morsbach concerned a dispute over whether a right of way deed created a fee or easement interest in a railroad line transversing a parcel of property in Thurston County. 152 Wash. at 562, 278 P. 686. The right of way in question had been long since abandoned and was subsequently conveyed to the State and then to the county for the purposes of building a county road. Id. at 563, 278 P. 686. This court held that the deed language, conveying a "`right of way for the construction of [a] railroad'" and the corresponding property description, demonstrated the parties' intent to pass only an casement interest to the railroad. Id. at 564-65, 575, 278 P. 686. It so held in spite of the warranty nature of the deed. Id. at 564-65, 278 P. 686. As such, the court held that the easement reverted to the fee property owners upon abandonment. Id. at 575, 278 P. 686.
[7] See supra pp. 22-23.
[8] Considering the fourth Brown factor  "whether the deed granted only the privilege of constructing, operating, or maintaining a railroad over the land," Brown 130 Wash.2d at 438, 924 P.2d 908  while the deed did grant the railroad the "right to construct, maintain and operate a railway," it also granted a certain "strip of land." CP at 654. As such, we do not find that "only" such a privilege was granted. Brown, 130 Wash.2d at 438, 924 P.2d 908 (emphasis added).
[9] But see Roeder Co. v. K & E Moving & Storage Co., 102 Wash.App. 49, 56, 4 P.3d 839 (2000) (noting the "nominal consideration" of $1 "does not reveal much"), review denied, 142 Wash.2d 1017, 16 P.3d 1264 (2001).
[10] See CP 654-55 (habendum clause recites that the conveyance is "forever" and the granting clause purports to convey a "right of way for a railway forever, together with the perpetual right to . . . operate a railway" (emphasis added)).
[11] Level 3 asserts a recent Division One case, Ray v. King County, 120 Wash.App. 564, 86 P.3d 183, review denied, 152 Wash.2d 1027, 101 P.3d 421 (2004), which applied the Brown factors to a railroad deed and found a fee simple conveyance, is analogous here and we should apply the same analysis. However, while the Ray deed did include the phrase "right of way" it did so only to the extent that it stated it was conveying a "right of way strip." Id. at 572, 86 P.3d 183. The Ray court thus found no presumption in favor of an easement and applied the Brown, factors to reach its conclusion that a fee interest was transferred. Here, the deed specifically established the purpose of the grant when it stated the land was "to be used by [the Railway] as a right of way for a railway." CP at 654. This creates a presumption in favor of an easement which was not present in Ray.
[12] In addition to the deed language, we may also look to the circumstance surrounding the deed's execution and the subsequent conduct of the parties. See, e.g., Brown, 130 Wash.2d at 438, 924 P.2d 908; Harris v. Ski Park Farms, Inc., 120 Wash.2d 727, 739, 844 P.2d 1006 (1993); Roeder, 105 Wash.2d at 572-73, 716 P.2d 855. The parties draw our attention to only one such circumstance, disputing the relevancy of the 1960 deed conveying the property from Ora to her son. See CP at 731-32. The quitclaim deed specifically excepted the "right-of-way of the Northern Pacific Railway." CP at 731-32. The Court of Appeals found that this exception provided little insight as it "logically could have been an expression of the parties' understanding that Ronald Kershaw's fee interest was subject to the railroad's easement." Kershaw Sunnyside Ranches, 121 Wash.App. at 728, 91 P.3d 104. It reasoned that Level 3's argument would be more persuasive had the exception excepted the right of way "`in terms of acres of land'" as opposed to simply the "right of way." Id. (quoting King County v. Rasmussen, 299 F.3d 1077, 1087 (9th Cir.2002)).

The Court of Appeals correctly concluded that the exception, as drafted, is ambiguous and conveys no clear and express evidence of the parties' intent 55 years earlier. Because the subsequent conduct of the parties does not provide a clear contrary intent, the language of the deed as discerned above controls, cf. Brown, 150 Wash.2d at 438, 78 P.3d 640 (citing Scott, 49 Wash.2d at 162, 299 P.2d 204), and we find the 1905 deed created an easement interest.
[13] This question is separate and distinct from the issue discussed in footnote 11, supra, where the parties disputed whether the 1960 deed was instructive in discerning the parties' intent in 1905. Here, the parties dispute the effect of the 1960 deed itself on ownership of the right of way easement.

Additionally, Kershaw asserts that Level 3 is raising this issue for the first time on appeal. However, Level 3 made the same argument to the trial court in its motion for summary judgment. CP at 572-73.
[14] The Court of Appeals analysis of this dispute is unsatisfactory. It erroneously relies on the nature of the deed as a quitclaim deed for the proposition that it conveyed "`all the then existing legal and equitable rights of the grantor'" and thus included Ora Kershaw's rights in the right of way. Kershaw Sunnyside Ranches, 121 Wash.App. at 728, 91 P.3d 104 (quoting RCW 64.04.050) (ostensibly distinguishing Harris on the basis that it involved a statutory warranty deed). However, a quitclaim deed differs from a warranty or bargain and sale deed only as to the extent, if any, of the warranties which accompany the transfer of property. An exception in a quitclaim deed has the same legal effect as an exception in any other form of deed.
[15] Even absent ambiguity, this court, unlike in statutory or contract construction cases, has consistently examined the circumstances surrounding the transfer and subsequent conduct of the parties, regardless of ambiguity, if helpful in ascertaining the parties' intent, which is "of paramount importance." Brown, 130 Wash.2d at 437-38, 924 P.2d 908.
[16] ROBERT F. UTTER & HUGH D. SPITZER, THE WASHINGTON STATE CONSTITUTION A REFERENCE GUIDE 195 (2002).
[17] This provision, distinguishing rights of way acquired by government grant from those acquired from private individuals and requiring that telecommunication companies exercise their eminent domain powers for the latter, has been the law of this state since 1890. See LAWS OF 1890, § 5, at 292-93, codified at REV. REM. STAT. § 11352, recodified by LAWS OF 1961, ch. 14 § 80.36.040 at RCW 80.36.040.
[18] Level 3's construction of this statutory provision in its briefing completely ignores the proviso requiring the eminent domain proceeding. See, e.g., Br. of Appellant Level 3 at 26.
[19] We decide today only that RCW 80.36.040 mandates an eminent domain proceeding in this context. We do not decide whether article I, section 16 of the Washington Constitution or the fifth amendment of the United States Constitution would similarly mandate such a proceeding or appropriate compensation. See, e.g., Tunstall v. Bergeson, 141 Wash.2d 201, 210, 5 P.3d 691 (2000) ("Where an issue may be resolved on statutory grounds, the court will avoid deciding the issue on constitutional grounds.").
[20] Cf. RESTATEMENT (SECOND) OF TORTS § 161 (1965) ("A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it."); see also cf. Keesling v. City of Seattle, 52 Wash.2d 247, 253-54, 324 P.2d 806 (1958) (recognizing distinction between eminent domain failure and trespass but permitting imposition of liability under alternate theory).
[21] But see Wright & Hester, supra, at 414 (pointing out that if a railroad has exclusive control of the surface of the right of way the owner of the servient property presumably could neither authorize nor prohibit access to the physical domain necessary to lay the underground cable in the first place). While this observation may or may not be true, it does not address the current presence of the underground cable nor the relevancy of RCW 80.36.040.
[1] The court in Brown observed that "[t]he statutory form alleviated drafting and interpretation problems manifest under the prior system." Brown, 130 Wash.2d at 437 n. 5, 924 P.2d 908.
[2] The Court of Appeals erroneously concluded that the 1905 deed contains a reverter clause. The language relied on by the Court of Appeals in the final paragraph of the deed instead contains the railroad's obligation to uphold certain covenants and agreements so long as a railroad is maintained.
[3] While Level 3 contends that there is evidence of subsequent conduct that favors the conclusion that a fee simple interest was conveyed, I disagree. In 1960 one of the original grantors quitclaimed her share in the Kershaw property to her son, and specifically excepted the "right-of-way of the Northern Pacific Railway [the successor to the grantee's interest]." CP at 731-32. In 1986 the son and his wife transferred their interest to the family business, again excepting the right of way. CP at 726. The exceptions are equally consistent with that interest being an easement or a fee simple. The best that can be said of these exceptions is that whatever interest was held by Northern Pacific, it was not conveyed by the original grantor to her son or by her son to the family business.