[No. 13057.   Department Two.   April 19, 1916.]

ANNA A. BAYLEY, *Respondent*, v. NATIONAL POLE COMPANY *Appellant*.[1]

TROVER AND CONVERSION — CONSTRUCTIVE CONVERSION — PURPORTED SALE. A sale by defendant of all cedar poles "owned by us at Gray's Spur," when the defendant had no poles there, is a constructive conversion of plaintiff's poles there located and claimed by the vendee.

SAME—EVIDENCE—SUFFICIENCY—ADMISSIBILITY. Upon an issue as to whether defendant converted to its own use certain rejected culls from a lot of cedar poles purchased, by branding them, the fact that it attempted to sell them after removing all it had purchased, is sufficient to raise an inference that it did brand them; and evidence of a witness that some of them which he purchased were so branded is admissible.

EVIDENCE—PAROL EVIDENCE—TO VARY WRITING. A memorandum of sale of "all poles owned by us at Gray's Spur," cannot be explained or varied by oral evidence as to what the vendor intended to sell.

TROVER AND CONVERSION—ACTIONS—INSTRUCTIONS—INTENT. Upon an issue as to the constructive conversion of cedar poles by a sale of the same as poles of the defendant, what the defendant "intended" is merged in the act, and properly omitted from instructions as to what constitutes a conversion.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered February 11, 1915, upon the verdict of a jury rendered in favor of the plaintiff, in an action for conversion, after a trial on the merits. Affirmed.

*D. W. Henley*, for appellant.

*Alva S. Sherlock* and *Rochford & Wilson*, for respondent.

HOLCOMB, J.—The question to be determined in this case is whether appellant or some other committed the acts of appropriation constituting a conversion of 519 cedar poles and piles and a quantity of cedar post stock, of the alleged value

[1]Reported in 156 Pac. 867.

of $1,388.20.   The verdict was for respondent in the sum of $1,019.30.

Seventeen errors are assigned for the reversal of the judgment, several of which, however, are not argued in the briefs of appellant.   Respondent sued as the assignee of the claim of a copartnership consisting of J. L. Bayley and B. F. Seeley.   According to respondent's evidence, long prior to the occurrence of the matters complained of, Bayley & Seeley had sold to appellant, and delivered at a landing platform on a railroad called Gray's Spur, in 1907, under a contract, about 1,622 green-cut cedar poles.   Appellant caused the poles delivered to be inspected, and those accepted as satisfactory were marked with a stamp with the brand of a diamond-shaped figure having a large K in it and called the "Diamond K" brand.   Twelve hundred and ninety-nine of the poles were accepted, and marked or branded with appellant's brand of diamond K.   All poles rejected were left unmarked. These poles all remained in the yard, which belonged to Bayley & Seeley, at Gray's Spur, and afterwards appellant loaded and shipped out the 1,299 poles which had been accepted and marked by it.   Bayley & Seeley had there also about 785 dead, fire-killed, and defective poles which appellant would not purchase or accept from them, and which were piled in separate piles.   These were valuable to make into posts when they were too defective for poles.   They were called culls, and appellant refused, under its contract with Bayley & Seeley, to have anything to do with culls.   There is no evidence that appellant ever had any other poles at Gray's Spur than the sound cedar poles delivered by and received from Bayley & Seeley.

In 1911, or the first of 1912, Seeley visited the Gray's Spur yard and found and counted 234 of the 785 defective poles they had left there in 1908.   Seeley had sold and delivered 240 of them to a concern, which was all that Bayley & Seeley disposed of during that time.   On October 7, 1911, appellant, for $375, sold to one George Huscroft, and made a writ-

ten memorandum thereof, "all cedar poles, owned by us [appellant] at Gray's Spur." In January, 1911, appellant had loaded and shipped from the yard 150 poles; in April, 1914, appellant had shipped from the yard 248 poles; making a total of 398 poles shipped therefrom by appellant directly; and there were 50 poles remaining in the yard November, 1914. Huscroft claimed to have counted the poles in the yard before he bought in October, 1911, and then found 573 poles, which he claimed were marked with the brand of appellant. About the time of the sale by appellant to Huscroft, Bayley had contracted with one Bush for the sale of a car-load of the poles, and afterwards Bush loaded three carloads of them, but Huscroft claimed all of them and required Bush to settle for them with him.

I.   It is first urged that there is no evidence of any sale by appellant of any unbranded poles, and no evidence of any act of appellant or its agents by which respondent or her assignors were deprived of the possession or control of any unstamped poles belonging to her or them; and that the fact that some other person to whom appellant sold all the poles owned by it at that place, in removing the poles rightfully sold, should, without the connivance of the seller, take other poles not owned by it, although at the same place, would not render appellant liable. But the evidence for respondent tended to show that appellant owned no poles in the Bayley & Seeley yard at Gray's Spur, in October, 1911, and hence had none to sell. The purported sale to Huscroft was a constructive conversion. *Stickney v. Monroe,* 44 Me. 195; *Gilman & Sanborn v. Hill,* 36 N. H. 311; *Aschermann v. Best Brewing Co.,* 45 Wis. 262; *Gibbs v. Chase,* 10 Mass. 125; *Hale v. Ames,* 2 T. B. Mon. (Ky.) 143, 15 Am. Dec. 150; *McPheters v. Page,* 83 Me. 234, 22 Atl. 101, 23 Am. Dec. 772; *Fidalgo Island Shingle Co. v. Brown,* 61 Wash. 516, 112 Pac. 629.

In so far as the failure of the evidence to show any disposition or conversion by appellant of unbranded poles is

concerned, it was the theory of respondent that appellant, at some time, caused the brand to be placed on the poles appropriated by it, although it had previously rejected and refused to have anything to do with them. The direct evidence fails to show any act of placing the brand of appellant upon them; but it was an easy thing to do, and the fact that, when Bayley & Seeley last examined them, they did not have the brand upon them, and that appellant pretended to sell them, thus asserting ownership of them, would create an inference from the circumstances that it did at some time brand them.

II.   What has just been said disposes, also, of appellant's second assignment of error argued, that the court erred in admitting the testimony of Bush as to the poles loaded out from the yard by him under his attempted purchase from Bayley which he said were branded with the diamond K stamp, and for which he, on demand, paid Huscroft, who in turn had bought from appellant.

III.   On direct examination of witness Leavitt, appellant's manager, who made the sale to Huscroft, he was asked what, in making the sale, he intended to sell to Huscroft. He answered that he intended to sell all the poles owned by the National Pole Company. Objection was made and, on motion, this answer was stricken on the ground that the instrument speaks for itself. This is alleged as error. It was not error. The answer of the witness, in fact, exactly repeats the terms of the memorandum given to Huscroft, "We will sell you all the poles owned by us at Gray's Spur landing." It could not be made more comprehensive nor could it be explained or varied.

IV.   A number of errors are alleged in the refusal of the court to give certain instructions. They are lengthy and amplify every phase of the case. Some are based upon the theory of appellant that conversion, upon which trover may be based, *must be* a positive, tortious act, and that mere knowledge of such act would not be conversion. However,

the court very concisely and clearly instructed the jury as to what would render defendant liable and what would not. They were explicitly told that, "unless plaintiff proves that defendant took and converted to its own use, or sold and converted to its own use, poles and timber belonging to plaintiff, she could not recover." This was conformable to the law as stated in *Fidalgo Island Shingle Co. v. Brown, supra,* They were instructed that:

"If you shall find by the evidence that the National Pole Company owned and had poles decked at Gray's Spur upon the date of the memorandum of sale, and sold and received pay for all the poles it then owned at that point, and did not sell any other poles than those belonging to it, then your verdict must be for the defendant, notwithstanding you find that the party purchasing from the defendant, in loading out the poles so purchased, loaded out other poles belonging to plaintiff."

This was given upon request of appellant, except that the words "intend to" were in the requested instruction after the word "not" and before the word "sell," and were omitted by the court, of which omission appellant complains. The words "intend to" were not justified. What the appellant did was what governed. Its intent was merged in its act. The instruction was properly modified and given.

The above, and the three next following instructions, given by the court, clearly, simply, and properly submitted the law applicable to appellant's contentions in the case. The rights of appellant were fully protected by the instructions to the jury, and there was no error in the refusal or the giving of any instruction.

V. There was substantial evidence to support respondent's cause of action, upon all its issues, if believed by the jury, and we find no error which would justify us in reversing the judgment and sending the case back for a new trial. Judgment affirmed.

MOUNT, MAIN, and PARKER, JJ., concur.