[No. 19630.  Department One.  March 12, 1926.]

NORTHERN PACIFIC RAILWAY COMPANY, *Respondent*, v. TACOMA JUNK COMPANY et al., *Appellants*.[1]

[1] LIMITATION OF ACTIONS (87)—PLEADING AS DEFENSE—NECESSITY. The bar of the statute of limitations can not be asserted against recovery for a conversion, where the statute was not pleaded and there was no evidence from which it could be determined that the statute started running at any specific time.

[2] EASEMENTS (14)—ABANDONMENT OR NONUSER. Under an easement for a spur track providing that the land shall revert if the grantee cease to use the strip for railway purposes and "remove its rails therefrom," failure to use the road for a number of years, does not constitute an abandonment of the easement, except as to the portion from which the rails had been actually removed.

[3] TROVER AND CONVERSION (15)—ACTIONS—JOINT LIABILITY. Partners or co-adventurers who shared in the profits of a conversion, together with their agent cooperating in the purchase and sale of the property converted, are all liable as joint tort feasors, for the value of the property.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered April 29, 1925, upon the verdict of a jury rendered in favor of the plaintiff in an action for conversion. Affirmed.

*O. A. Tucker* and *Blackburn & Gielens*, for appellants.

*Geo. T. Reid* and *L. B. daPonte*, for respondent.

[1]Reported in 244 Pac. 117.

HOLCOMB, J.—This action was instituted by respondent against appellants to recover the value, alleged to be in the sum of $500, of a lot of rails and rail fittings claimed to have been converted by appellants to their own use.

Appellants denied the title of respondent to the rails, claiming that they had belonged to one Wilson, from whom they purchased them. Upon the trial both sides moved for a directed verdict, but the trial court directed judgment for respondent, submitting the question of damages to the jury, which found for respondent in the sum of $384.49.

Wilson, from whom the rails were purchased, and his wife, were the owners, and in possession, of a certain tract of farm land ever since 1920, upon which was a spur track running from Centralia to a gravel bunker. About 1902 there had been a mill, known as the Carlisle Mill, beyond the end of this track, which mill had been abandoned for a number of years,—according to some of the witnesses for as long as seventeen years. During the time the Wilsons owned the tract of land, there was no evidence of the existence of the mill. When the track was first laid, there had been granted a franchise to respondent, and the track was laid upon a public road. The public road had been vacated by public authority, the evidence as to the time of such vacation being vague and indefinite, but it was probably about ten years before the rails were taken.

Appellants assert that, by the vacation of the public road, the particular part of it upon which the track was located became the property of the Wilsons, and their predecessors in interest. It is insisted that the franchise under which respondent used this track was terminated whenever the track should be aban-

doned and no longer used. Appellants state that the franchise provides that, in case of abandonment and non-use, it expires. That statement is not accurate. Respondent's right of way was acquired by virtue of three instruments. One was by way of an easement from the Centralia Shingle Mills to respondent, dated April 24, 1892. The Centralia Shingle Mills had a franchise from Lewis county dated April 6, 1901, for the construction of this spur track on the county road, and it was under this franchise that the Shingle Mills granted the easement to respondent. The above easement covered a part of the right of way, and the remainder was covered by an easement dated April 24, 1922, from William Carlisle & Company, to respondent. The easement from the Centralia Shingle Mills to respondent, and the one from William Carlisle & Company, each contained the following clause:

"This conveyance is made that the grantee herein may maintain and operate a spur track or siding on said strip of land above described, and should grantee cease to use said tract of land for railway purposes and remove its rails therefrom, said land described shall revert unto said grantor and the right of said grantee to enter thereon shall cease."

The track had not been used for some time, because of the industries to be served thereby having ceased operations; but, in 1917, repair work was done upon it for the purpose of storing cars. The evidence showed that the rails had never been taken up by respondent, nor had any authority been given to anyone to take up the rails. In March, 1924, respondent's employees found that the rails had been removed, and, upon investigation, found that Wilson, claiming that respondent had abandoned the track and fixtures on the right of way, sold the rails to Hartman, who cooperated with Sussman, or the Tacoma Junk Company, and his

agent, in buying and selling the rails. Sussman furnished the money, and Hartman and Vidak (Sussman's agent) purchased the rails for $175. Hartman sold them and the profits were divided between Sussman and Hartman.

Respondent produced evidence to show that the rails had a value in the open market as second-hand railroad rails, with their fittings, and that they were worth, at the time of the conversion, the sum of $384.49. There was slight conflict on this evidence as to the value of the rails and fittings, appellants introducing some evidence to the effect that the property was marketable as iron junk only, and was of a value of eleven or twelve dollars per ton. The jury, however, accepted the evidence of respondent.

The principal question to be determined is, whether respondent had abandoned this right of way and the property left thereon.

[1] Appellants also claim that the statute of limitations prevented recovery, since under § 159, Rem. Comp. Stat., more than three years had expired after the apparent abandonment of the right of way and property. The statute of limitations is not pleaded by either of appellants in their separate answers, nor is there any evidence from which we can determine that there was any specific time at which the statute could be said to start running.

[2] Appellants assert that the franchise under which respondent held the right of way terminated automatically by non-user, and required no action on the part of the land-owner, and, upon the termination of the franchise, the right of way became the property of the adjoining land-owner.

It is argued that the Wilsons had the right to assume that respondent had abandoned its right, title and in-

terest in the right of way and the rails. The court properly instructed the jury to consider in their verdict only the rails taken from the track, and to disregard the rails that had been disconnected and removed from the track. Although this instruction is assailed, it was appropriate because of the terms of the franchises. It must be remembered that they provided that "should the grantee cease to use the strip of land for railway purposes *and remove its rails therefrom,* the land shall revert to the grantor." The track still remaining with the rails thereon, although disconnected from the original connection with the main line, disclosed no intention to abandon the right of way and track on the part of respondent. That condition existed up to the time the rails were removed therefrom by Wilson in March, 1924, and sold to appellants. The rails which had been removed from the track, which were at the extreme end of the right of way, and which apparently had been piled up, showed abandonment of that small portion of the track, and Wilson had an apparent right, under the franchise, to repossess himself of that portion of the right of way and the rails which had been thus removed.

The easements under which respondent held its title to the right of way contained their own terms as to when and how abandonment should be effected. A number of authorities cited by appellants, upon the question of abandonment by railways by non-compliance with conditions subsequent contained in deeds or other instruments granting easements, are not in point, for they do not contain the same terms as those embodied in these easements.

Non-user is not of itself sufficient to show abandonment of a right, nor will neglect for more than twenty

years to assert title to an interest in land by one who has a valuable title operate as an abandonment, where there is no adverse possession. 1 C. J., pp. 8 and 9.

In one of the cases cited by appellants, *Roby v. New York Central & Hudson River R. Co.*, 142 N. Y. 176, 36 N. E. 1053, this is said:

"The interest of the defendant in this strip of land was a permanent easement for the uses and purposes of its railroad [Citing cases]. While this easement exists, the defendant is entitled to the exclusive use, possession, and control of the land, and the owner of the fee has no right to use, occupy, or interfere with the same in any manner whatever. . . . We think the evidence does not show that the defendant had abandoned this strip of land, or its easement therein, so that the owner of the fee became entitled to the possession thereof. An easement may be abandoned by unequivocal acts showing a clear intention to abandon, or by mere nonuser, if continued for a long time. The mere use of the easement for a purpose not authorized, . . . or the temporary abandonment thereof, are not of themselves sufficient to constitute abandonment. . . . Under these authorities the acts claimed to constitute the abandonment of an easement must show the destruction thereof, or that its legitimate use has been rendered impossible by some act of the owner thereof, or some other unequivocal act showing an intention to permanently abandon and give up the easement. Here there are absolutely no acts of the kind mentioned."

We think the observations above quoted apply peculiarly to the case in hand.

In one case cited by appellants, *McClain v. Chicago, Rock Island & Pacific R. Co.*, 90 Iowa 646, 57 N. W. 594, there was a statute in Iowa, which provided that eight years nonuser of a railroad right of way would work a reversion. The supreme court in that case decided, however, that the existence of such a statute

did not forbid forfeiture for abandonment of use in accordance with the conditions of a deed. In that case the conditions of the deed were such that abandonment had taken place.

In another case cited by appellants, *Jones v. Van Bochove,* 103 Mich. 98, 61 N. W. 342, the evidence showed that the railroad had been taken up, the rails and ties removed, the fences taken away, and a bridge across an intersecting river torn down, which, of course, was ample evidence of an intention to abandon the easement for the right of way.

Other cases cited by appellants are no more in point, and it is useless to continue this discussion to unnecessary length.

We are obliged to conclude that, under the facts and circumstances shown in this case, especially considering the terms of the easements, respondent had not abandoned its right of way and the track thereon at the time of the conversion of the rails and fittings in question.

We are also convinced, contrary to the contention of appellants, that there was sufficient evidence to go to the jury as to the value of the property converted.

[3] As to the liability of all of appellants it is manifest from the evidence that Hartman and Sussman (or the Tacoma Junk Company) were partners or co-adventurers in the transaction, and shared in the profits. The other appellant was an agent of Sussman, and one cannot excuse his cooperation in a tort on the ground of agency. 38 Cyc. 2056. Upon the question of the joint or several liability of tort feasors for conversion, see: *Fidalgo Island Shingle Co. v. Brown,* 61 Wash. 516, 112 Pac. 629; *Bickford v. Hupp,* 83 Wash. 427, 145 Pac. 454; *Bayley v. National Pole Co.,*

90 Wash. 664, 156 Pac. 867; 38 Cyc. 2019, 2055, 2056; 26 R. C. L. 1137, 1138, 1139.

The judgment is affirmed.

TOLMAN, C. J., FULLERTON, MAIN, and MITCHELL, JJ., concur.