137 P.3d 9 (2006)
157 Wash.2d 154
Deborah S. HEG, Petitioner,
v.
Ralph C. ALLDREDGE and Claudia Alldredge, husband and wife, Respondents,
Estate of Lloyd O. Kalberg; John K. Sage and Shelly A. Ogden, husband and wife; Albert L. Odmark, Jr., and Nancy Ritzenthaler, husband and wife; Pope & Talbot, Inc., a Delaware corporation; Pope Resources, Inc., a Delaware corporation; Pope & Talbot, Inc., a California corporation; and Pope Resources, a Delaware limited partnership, Defendants Below.
No. 76706-8.
Supreme Court of Washington, En Banc.
Argued February 9, 2006.
Decided June 22, 2006.
*10 Michael L. Charneski, Attorney at Law, Woodinville, for Petitioner/Appellant.
Robert D. Johns, Duana Theresa Kolouskova, Johns Monroe Mitsunaga PLLC, Bellevue, for Appellee/Respondents.
Gerald Timothy Martin, Langley, for Defendant John Sage.
SANDERS, J.
¶ 1 Deborah Heg filed a quiet title action against Ralph and Claudia Alldredge to clarify her legal rights under a disputed easement over land owned by the Alldredges. The trial court granted Ms. Heg summary judgment and ruled she was entitled to ingress, egress, and road use over the easement and that the Alldredges' use of the easement could not unreasonably interfere with Ms. Heg's exercise of her easement rights. The Alldredges appealed. The Court of Appeals affirmed in part and reversed in part, holding summary judgment was inappropriate because sufficient evidence existed to support a finding Ms. Heg or one of her predecessors in interest abandoned the easement and that the Alldredges had presented a viable claim of equitable estoppel. *11 Heg v. Alldredge, 124 Wash.App. 297, 99 P.3d 914 (2004).
¶ 2 We hold mere nonuse of a recorded easement coupled with the use of alternate routes of ingress and egress does not, by itself, support a finding of abandonment. Because the record contains no other evidence Ms. Heg or her predecessors in interest intended to abandon the easement, she is entitled to summary judgment. We also hold equitable estoppel does not bar Ms. Heg from enforcing her easement rights because the record contains no evidence of admissions, statements, or acts by Ms. Heg inconsistent with her present claim, and accordingly, we reverse the Court of Appeals.

FACTS AND PROCEDURAL HISTORY
¶ 3 The easement at issue in this case was originally granted by Pope & Talbot, Inc.,[1] in 1957 via a declaration of easement (declaration) which stated in relevant part:
This easement shall be for ingress, egress, access and road purposes.
This easement shall vest in each owner of property which abuts upon the tracts of land hereinabove described and this easement shall be an easement running with the land both as to burden and benefit as to each such abutting tract.
Clerk's Papers (CP) at 338 (Decl. of Easement, filed Jan. 11, 1957).
¶ 4 The declaration described the two tracts of land over which the easement was created. One, referred to in the pleadings as Pope Tract 1, is a 60-foot-wide tract running from the northwest to the southeast. The other, Pope Tract 2, is a 40-foot-wide tract connecting Pope Tract 1 to Smugglers Cove Road. Pope Tracts 1 and 2, depicted as Parcels J and K in the clerk's papers (CP at 345, 340), collectively constitute the easement area.
¶ 5 Ms. Heg owns two adjoining parcels of land: Parcel A bordering Smugglers Cove Road, and Parcel B, a waterfront parcel. A road across Parcel A connects Parcel B, where Ms. Heg's house is located, to Smugglers Cove Road. The Alldredges own Parcels C and D, located to the south of Ms. Heg's property. Parcel C borders Smugglers Cove Road, and Parcel D is a waterfront parcel. Parcel J, also owned by the Alldredges, extends southeast from the border of Parcels A and B, between Parcels C and D. Parcel K, Smugglers Lagoon Lane, connects Parcel J to Smugglers Cove Road.
¶ 6 The Alldredges purchased Parcels C and D in 1989. Before the purchase, Alldredges became aware Parcel J was not merely an easement, but was in fact a separate parcel still owned by Pope & Talbot, Inc. Alldredges completed the purchase of Parcel J in July 1989. Subsequently, between 1994 and 1998, Alldredges quitclaimed to the owners of Parcels G, H, and I, waterfront parcels adjoining Parcel J to the west, the adjacent portions of Parcel J.
¶ 7 Ms. Heg purchased Parcels A and B in March 1993. The statutory warranty deed executed between Heg and the seller, Donald Thomas, stated Mr. Thomas conveyed to Heg Parcels A and B, "together with an easement for ingress, egress and utilities as described in [the declaration]."[2] Subsequent to the purchase, Ms. Heg completed two boundary line adjustments to her property. The first adjustment enlarged Parcel B at the expense of Parcel A. Following this adjustment, Parcels A and B both continued to abut the easement. The second adjustment involved an exchange between Ms. Heg and the Alldredges, with Ms. Heg swapping a portion of Parcel B in exchange for an equal-sized portion of the easement area along with a payment of $2,000.[3] As with the earlier adjustment, Parcels A and B both continued to abut the easement.
¶ 8 When the instant litigation commenced Ms. Heg owned Parcels A and B, the Alldredges owned Parcels C, D and J, the owners of G, H and I owned their extended[4] *12 parcels, and Pope and Talbot, Inc., continued to own Parcel K, consisting of Pope Tract 2 and the portion of Pope Tract 1 south of Parcel I.
¶ 9 In November 2001 Ms. Heg filed a complaint to quiet title to easement, requesting judgment quieting her title and rights in the easement and an order requiring the Alldredges to remove all improvements from the easement area interfering with her easement rights. The Alldredges' answer raised six affirmative defenses: (1) Ms. Heg failed to name as defendants other owners of parcels abutting Parcel J; (2) Ms. Heg's predecessors in interest abandoned any rights to the easement by developing another route for ingress and egress, and she forfeited any of her rights by improving this access road on her property; (3) any easement rights granted in the declaration were not meant to apply to Ms. Heg's property because a more direct ingress/egress road existed, and those easement rights were meant solely to benefit landowners who did not have a more direct means of ingress and egress; (4) any easement rights benefiting Ms. Heg's property had lapsed and had been lost by virtue of adverse possession, applicable statute of limitations and/or the equitable doctrine of laches; (5) Ms. Heg's misconduct in asserting her easement rights constituted unclean hands, barring her from any equitable remedies; and (6) Ms. Heg misled the Alldredges about her intention to assert easement rights in order to secure the 1998 boundary line adjustment, barring her quiet title action.
¶ 10 In May 2002 Ms. Heg filed a motion for summary judgment. She argued that as an owner of property abutting the easement she was entitled to judgment in her favor quieting title to the easement, and requested the court to enjoin defendants from interfering with her rights under the easement. The trial court granted summary judgment in her favor in October 2002. The trial court ruled (1) the declaration created an easement appurtenant to Parcels A and B; (2) Ms. Heg was not estopped from asserting her easement rights; (3) Ms. Heg did not abandon the easement because mere nonuse of an easement does not extinguish it; and (4) the Alldredges' balancing of hardships argument relates to specific uses of an easement, but not to an enquiry of whether an easement exists. The Alldredges appealed.
¶ 11 On appeal, Alldredges asserted the trial court erred by failing to recognize material issues of fact existed about whether the easement had been abandoned, whether Ms. Heg was equitably estopped from enforcing the easement, and by failing to defer the determination of the scope of the rights under the easement granted Ms. Heg until the actual use of the easement is proposed. The Court of Appeals agreed and reversed the grant of summary judgment. Relying on Barnhart v. Gold Run, Inc., 68 Wash.App. 417, 843 P.2d 545 (1993), the Court of Appeals held that nonuse of an unopened easement coupled with long term use of an alternate means of ingress and egress can support a finding of abandonment, Heg, 124 Wash.App. at 308, 99 P.3d 914, and that sufficient evidence existed for a trier of fact to determine Ms. Heg or one of her predecessors in interest abandoned the easement. Id. at 309, 99 P.3d 914. Despite rejecting the Alldredges' claims the land swap transaction estopped Ms. Heg from enforcing her easement rights because they would not have agreed to it otherwise, the court held the Alldredges presented a viable estoppel claim alleging detrimental reliance on the acts of Ms. Heg's predecessors when they selected a building site for their house. Id. at 313, 99 P.3d 914. Finally, the Court of Appeals expressly preserved the issue of relative hardship determination for future review, if and when Ms. Heg elects to build a roadway on the easement. Subsequently we granted Ms. Heg's petition for review.

STANDARD OF REVIEW
¶ 12 When reviewing a summary judgment order we evaluate the matter de novo, performing the same inquiry as the trial court. Ski Acres, Inc. v. Kittitas County, 118 Wash.2d 852, 854, 827 P.2d 1000 (1992) (citing Herron v. Tribune Publ'g Co., 108 Wash.2d 162, 169, 736 P.2d 249 (1987)). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c). We consider the *13 facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982) (citing Yakima Fruit & Cold Storage Co. v. Cent. Heating & Plumbing Co., 81 Wash.2d 528, 530, 503 P.2d 108 (1972)). The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. Morris v. McNicol, 83 Wash.2d 491, 494-95, 519 P.2d 7 (1974).

ANALYSIS

I. ABANDONMENT
¶ 13 Extinguishing an easement through abandonment requires more than mere nonuse  the nonuse "`must be accompanied with the express or implied intention of abandonment.'" Netherlands Am. Mortgage Bank v. E. Ry. & Lumber Co., 142 Wash. 204, 210, 252 P. 916 (1927) (quoting Christopher G. Tiedeman, An Elementary Treatise on the American Law of Real Property, § 605, at 574 (2d ed. 1892)). This court has previously held that "the lapse of time does not, of itself, constitute an abandonment, but is a circumstance for the jury to consider in arriving at the intention of the [owner of the dominant estate]" and that "an intention to abandon property for which one has paid value will not be presumed." Neitzel v. Spokane Int'l Ry. Co., 80 Wash. 30, 41, 141 P. 186 (1914). An easement appurtenant which runs with the land "`is not a mere privilege to be enjoyed by the person to whom it is granted or by whom it is reserved. It passes by a deed of such person to his grantee and follows the land without any mention whatever.'" Winsten v. Prichard, 23 Wash.App. 428, 431, 597 P.2d 415 (1979) (quoting 2 George W. Thompson, Commentaries on the Modern Law of Real Property § 322, at 69 (John S. Grimes repl.1961)). Acts evidencing abandonment of an easement must be unequivocal and decisive and inconsistent with the continued existence of the easement. 28A C.J.S. Easements § 125 (1996).

A. NONUSE
¶ 14 It is axiomatic that if Ms. Heg and her predecessors in interest had been using the easement, no reasonable finder of fact could find intent to abandon it. In the petition for review, Ms. Heg assigns error to the Court of Appeals decision for implicitly holding pedestrian use did not constitute "use" of the easement. It is true the Court of Appeals analysis of abandonment focuses exclusively on the issue of intent to abandon and does not analyze the question of nonuse. See Heg, 124 Wash.App. at 307-10, 99 P.3d 914. However, that is so because Ms. Heg raises this argument for the first time in her petition for review. The trial court disposed of the question of abandonment by simply concluding "[m]ere nonuse of an easement for no matter how long a period will not extinguish it"[5] because Ms. Heg's summary judgment motion and the accompanying declaration and memorandum did not argue the easement was being used. Ms. Heg also failed to make this argument on appeal, arguing instead that her "non-use of the Easement and use of her own private driveway is immaterial."[6] Ms. Heg now argues the easement has been in use for pedestrian purposes. We decline to address this issue because it is being raised for the first time on appeal. See State v. McDonald, 138 Wash.2d 680, 691, 981 P.2d 443 (1999) ("Under Rule 2.5(a) of the Rules of Appellate Procedure ... appellate courts will generally not consider issues raised for the first time on appeal.").

B. INTENT TO ABANDON
¶ 15 The central question in this case is whether Ms. Heg or any of her predecessors in interest ever intended to abandon the disputed easement. Concluding the trier of fact could find Ms. Heg or her predecessors intended to abandon the easement, the Court of Appeals focused on two facts: the existence of a roadway providing both Parcels A and B with alternate means of access to Smugglers Cove Road, and the existence of a road-cut put in place by Thomas, which created a four- to six-foot barrier to automobile access between Ms. Heg's parcels and the *14 easement area. Relying on Barnhart v. Gold Run, Inc. 68 Wash.App. 417, 843 P.2d 545 (1993) for the proposition that "[n]onuse of a platted but never opened easement coupled with long term use of a substitute way will also support a finding of abandonment," Heg, 124 Wash.App. at 308, 99 P.3d 914, the Court of Appeals reasoned Ms. Heg's continued use of alternative means of ingress and egress could support a finding of abandonment.
¶ 16 In Barnhart three neighboring lots shared a common platted 30-foot right of way for a private road adjacent to the northern perimeter of the tracts. In the 1940s, the three lots came into ownership of Mrs. Marie Harris, who built a "jeep road" north of the platted right of way, having already built a house encroaching on it. The Barnharts purchased the easternmost of the three lots, and after having it surveyed, commenced an action to determine their interest in the platted right of way. The trial court ruled the defendant had acquired title to the platted right of way through adverse possession.
¶ 17 The Barnharts appealed, and Division Three affirmed the trial court, holding that "[t]he undisputed evidence supports a finding the location of the platted road right of way shifted to the existing road, due to a long period of use which predated the parties' ownership." Barnhart, 68 Wash.App. at 420-21, 843 P.2d 545 (emphasis added). In Barnhart, Division Three relied on another case involving a roadway built outside of the platted location, Curtis v. Zuck, 65 Wash. App. 377, 829 P.2d 187 (1992).
¶ 18 In Curtis, a gravel road was built north of the platted street location. Plaintiffs bought property north of the platted street, defendants bought the property to the south. Defendants built a home encroaching on the platted street, having been advised the gravel road marked the northern boundary of their land. The trial court refused to eject the defendants from the platted street or to quiet the plaintiffs' title to the portion of their land encroached upon by the gravel road. The appellate court affirmed, accepting defendants' argument that "the private easement they share[d] with the [plaintiffs] ha[d] simply shifted due to a period of long use which predate[d] both parties' ownership." Curtis, 65 Wash.App. at 382, 829 P.2d 187.
¶ 19 Barnhart distinguished Burkhard v. Bowen, 32 Wash.2d 613, 203 P.2d 361 (1949) and Van Buren v. Trumbull, 92 Wash. 691, 159 P. 891 (1916) which upheld the rights of owners of unopened easements against adverse possession challenges, reasoning that whereas Burkhard and Van Buren "attempted to extinguish the private easements of adjoining landowners by affirmatively excluding them from their right to use the platted alley or street," in Curtis "there was no such attempt." Barnhart, 68 Wash.App. at 422, 843 P.2d 545 (emphasis added).
¶ 20 Ms. Heg asserts the Court of Appeals misapplied Barnhart because the building of both her alternate access road and the road cut predate the creation of the easement. According to Ms. Heg, she and her predecessors did not elect to ignore an existing easement when building the alternate access road because the easement did not exist until 1957. Similarly, Ms. Heg argues the existence of the road cut does not constitute evidence of intent to abandon because when it was created the easement did not exist. The Alldredges counter the instant case is similar to Barnhart because "a court may find that abandonment of an easement has occurred if the original location of an easement was not used for its intended purpose, the easement area was used for other purposes," and because "a substitute easement was created in a different location."[7]
¶ 21 The Alldredges' reliance on Barnhart is misplaced. Unlike the defendant in Barnhart, the Alldredges seek to exclude Ms. Heg from using her recorded easement rights, not merely alter the location where they exist. Attempted exclusion from enjoying easement rights is precisely why the Barnhart court distinguished both Burkhard and Van Buren, and why Barnhart is inapplicable in this case. Ms. Heg's driveway over Parcel A is unlike the "jeep road" in that case because it was not created as a result of confusion over the precise location of the easement, but *15 rather as a separate accommodation which predates the creation of the easement.
¶ 22 The other asserted evidence of abandonment, the existence of a road cut between Parcel B and the easement, is similarly unavailing. The Court of Appeals cited Northern Pacific Railway Co. v. Tacoma Junk Co., 138 Wash. 1, 244 P. 117 (1926) for the proposition the erection of a "barrier rendering use of a right of way impossible or impractical will support a finding of abandonment." Heg, 124 Wash.App. at 307, 99 P.3d 914. However Northern Pacific Railway Co. is readily distinguishable from the instant case because its holding hinged on the conditions for abandonment specified in the easement, namely the cessation of use of the tract for railway purposes and the removal of the rails, and not on the common law governing abandonment of easements. N. Pac. Ry. Co., 138 Wash. at 5, 244 P. 117. The court reasoned that because "[t]he easements ... contained their own terms as to when and how abandonment should be effected" the authorities cited by appellants "[were] not in point, for they [did] not contain the same terms as those embodied in these easements." Id. The same analysis applies here, and we decline to extend the holding of Northern Pacific Railway Co. where the easement at issue does not include corresponding provisions.

II. COLLATERAL ESTOPPEL
¶ 23 The Alldredges next contend that even if Ms. Heg has not abandoned her easement, she is nonetheless estopped from enforcing her rights. As we have explained,
equitable estoppel requires a showing that the party to be estopped (1) made an admission, statement or act which was inconsistent with his later claim; (2) that the other party relied thereon; and (3) that the other party would suffer injury if the party to be estopped were allowed to contradict or repudiate his earlier admission, statement or act.
Pub. Util. Dist. No. 1 v. Walbrook Ins. Co., 115 Wash.2d 339, 347, 797 P.2d 504 (1990).
¶ 24 On appeal the Alldredges argued Ms. Heg was estopped from enforcing her easement rights because (1) at Ms. Heg's request the Alldredges had installed a drainage system on the downhill portion of the easement; (2) in reliance on Ms. Heg's predecessors' alleged abandonment of the easement, the Alldredges improved and incorporated into their yard portions of the easement abutting their parcel; and (3) the Alldredges agreed to the boundary line adjustment with Ms. Heg after she raised the possibility of taking legal action to enforce the easement, which the Alldredges interpreted to mean there would be no legal action if agreement was reached. The Court of Appeals found persuasive Ms. Heg's argument that the drainage system, being only 10 feet wide, did not interfere with simultaneous use of the 60-foot-wide easement for road access, and that her potential claims regarding the easement were not part of the boundary line adjustment bargain, and rejected the first and the third estoppel claims.[8]Heg, 124 Wash.App. at 311-12, 99 P.3d 914. However, the court found the Alldredges presented a viable claim of equitable estoppel with respect to the second claim and remanded for trial. Id. at 313, 99 P.3d 914. In so holding, the court relied on Humphrey v. Jenks, 61 Wash.2d 565, 379 P.2d 366 (1963) for the proposition the conduct of a party's predecessors may bar the enforcement of easement rights.
¶ 25 Ms. Heg argues she cannot be estopped from enforcing her easement rights based on the alleged conduct of her predecessors in interest, and that the Alldredges did not allege "justifiable reliance" upon such conduct. The Alldredges assert the Court of Appeals correctly construed Humphrey because otherwise the estopped party could resurrect a barred claim by transferring title to a third party. In Humphrey we never reached that question because the party asserting estoppel did not establish reasonable reliance. Humphrey, 61 Wash.2d at 570, 379 P.2d 366. Alldredges' argument that Heg's predecessors' conduct bars her from enforcing estoppel rights cannot be squared with *16 the language requiring "the party to be estopped" to have acted or made statements inconsistent with his or her later claim, Walbrook, 115 Wash.2d at 347, 797 P.2d 504. Because the record contains no evidence of any acts or statements by Heg inconsistent with her claim of easement rights, Alldredges' second estoppel claim is without merit.

CONCLUSION
¶ 26 We reverse the Court of Appeals. Because the record contains no evidence Ms. Heg or her predecessors in interest intended to abandon the easement or any evidence of admissions, statements, or actions inconsistent with her claim, Ms. Heg is entitled to summary judgment as a matter of law.
Concurring: ALEXANDER, C.J., and C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, FAIRHURST and J.M. JOHNSON, JJ.
NOTES
[1] Pope & Talbot, Inc., entities and owners of certain parcels adjoining the easement were dismissed as defendants. No other defendants named in the suit have joined the Alldredges' appeal.
[2] CP at 389-90.
[3] The Alldredges paid the additional $2,000 to compensate Heg for the lower assessed land value of the traded land.
[4] Extended to include the portions of Parcel J quitclaimed to them by the Alldredges.
[5] CP at 13 (Order Granting Pl's. Mot. for Summ. J, at 8).
[6] Br. of Resp't (Ct. of Appeals No. 51443-1-I, at 18).
[7] Answer to Pet. for Review at 11.
[8] The Alldredges do not challenge the Court of Appeals dismissal of these two claims, and we need not address them here.